[Cite as *State v. Mackey*, 2018-Ohio-516.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-42 |
| | : | |
| v. | : | Trial Court Case No. 97-CR-318 |
| | : | |
| ROBERT L. MACKEY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of February, 2018.

. . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, 50 E. Columbia Street, 4th Floor, Springfield, Ohio 45501
        Attorney for Plaintiff-Appellee

DEREK A. FARMER, Atty. Reg. No. 0071654, 106 Short Street, Suite 101, Gahanna, Ohio 43230
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Robert L. Mackey appeals from the trial court's denial of his R.C. 2953.21 petition for post-conviction relief after an evidentiary hearing.

{¶ 2} Mackey advances two assignments of error. First, he contends the trial court erred in failing to find him unavoidably prevented from timely obtaining recantations from two witnesses who testified at his trial. Second, he claims the trial court erred in failing to strike an untimely post-hearing memorandum filed by the State.

{¶ 3} The record reflects that a jury convicted Mackey in September 1998 on one count of drug trafficking with a schoolyard specification, two counts of drug possession (one count for possession of over 100 grams of crack cocaine (described by the court at sentencing as 252 grams) with an MDO specification, and one count for possession of cocaine), one count of having a weapon while under disability, and one count of possessing criminal tools. He received a twenty-eight-year prison sentence to be served consecutive to a mandatory ten-year sentence from another drug case for which Mackey was out of custody on an appeal bond at the time of the events that led to the charges in this case. Upon a motion by Mackey, he was resentenced on February 8, 2011 and the 28 year sentence in this case was made concurrent to the other case for an aggregate sentence of 28 years in prison.

{¶ 4} More than 15 years after his conviction, in March 2014, Mackey filed a petition for post-conviction relief under R.C. 2953.21. Therein, he argued that he had been unavoidably prevented from securing affidavits from Cairo Buggs and Heather Peterson, two prosecution witnesses at his trial. In documentation accompanying the petition, Buggs and Peterson recanted their trial testimony incriminating Mackey. In his affidavit, Buggs

claimed, contrary to his apparent trial testimony, that the drugs and guns police found in his apartment were his and not Robert Mackey's, that he was a confidential informant for the police and that he had made a deal with the police and did not want to do anything to break it. Peterson's "affidavit," a handwritten note with a notary seal, indicates, apparently contrary to her trial testimony, that Robert Mackey was not one of the two men who came into her apartment to sell her cocaine at the time of what appears to be a controlled buy set up by police with Peterson wearing a "wire."[1] In April 2014, the trial court dismissed the petition, without a hearing, on the basis of untimeliness. Mackey appealed the dismissal, and this court reversed and remanded in *State v. Mackey*, 2d Dist. Clark No. 2014-CA-68, 2015-Ohio-899, reasoning:

> As previously discussed, Mackey submitted the affidavits of himself, Buggs, and Peterson. For his part, Mackey claims that he was unavoidably prevented from obtaining Buggs and Peterson's sworn statements because they were both heavily abusing drugs, and Buggs was serving a sentence in federal prison. Mackey also averred that Buggs and Peterson would simply not talk to him out of fear of the police. Mackey stated that Peterson would not recant her incriminating testimony because she had been threatened by authorities that her children would be taken away from her. Mackey's counsel was able to eventually contact Buggs while he was incarcerated and was able to procure a written statement in which Buggs recanted his testimony, but he was unable to get the document notarized

---

[1] Appellant has not requested or caused the transcript of the trial to be part of the record and we are unable to analyze whether this "new" evidence would have made any difference in light of whatever other evidence was introduced at trial.

while in prison. Mackey asserts that as soon as Buggs was released from prison, he came to Mackey's counsel's office and had his affidavit notarized. Lastly, Mackey avers that he and his family were simply unable to obtain the exculpatory testimony in Buggs' and Peterson's affidavits until they freely and voluntarily provided it.

Pursuant to R.C. 2953.23(A)(1)(a), we find that Mackey's affidavit established that he was entitled to a hearing in order to establish that he was "unavoidably prevented" from the discovery that Buggs and Peterson recanted their incriminating trial testimony against him. Accordingly, the trial court erred when it overruled Mackey's petition for post-conviction relief without a hearing.

*Id.* at ¶ 16-17.

{¶ 5} On remand, the trial court held an August 3, 2015 evidentiary hearing to determine whether Mackey had been unavoidably prevented from timely discovering Buggs' and Peterson's recantations. Mackey testified at the hearing along with Peterson, Buggs, and Mackey's mother, Maryam Muhammad. After considering their testimony, the trial court held that Mackey had failed to establish being unavoidably prevented from timely discovering the recantations at issue. It reasoned in part:

This is not a case of "new evidence recently discovered." The defendant's motion is based upon the allegation that the witnesses lied at his trial. He argues that he was unavoidably prevented from presenting the contradictory evidence showing that the witnesses lied at his trial until they were willing to come forward and admit the same. This gives rise to the

credibility of the affidavits.

The affidavits recant the testimony of the witnesses given during the trial. They are statements of the witnesses given years after the trial on behalf of an individual who personally and/or through family has close connections with the witnesses. Further, as indicated in the Court's prior order, the records indicate that both of these witnesses have prior felony convictions for trafficking in drugs, which would be one factor in weighing their credibility.

Upon review of the record of this case, the Court finds that the petition has been filed out of the time period allowed pursuant to O.R.C. section 2953.21 and the defendant has failed to establish any exception set forth in O.R.C. section 2953.23 that applies to the factual history of this case.

It is therefore ORDERED that the Petition be DENIED.

(Doc. #78 at 1-2).

{¶ 6} On appeal, Mackey challenges the trial court's finding that he was not unavoidably prevented from timely obtaining the recanting affidavits of Peterson and Buggs. Mackey asserts that his witnesses presented uncontroverted testimony explaining the efforts made to obtain the affidavits, the delay in obtaining them, and the circumstances that led Peterson and Buggs to provide them. With regard to the trial court's credibility determinations, Mackey contends the issue before the trial court was not whether the recantations were true or false. According to Mackey, the sole issue was whether he was unavoidably prevented from obtaining them in a timely manner. In any

event, Mackey also challenges the trial court's credibility determinations on the merits. He argues that Peterson and Buggs did not present inconsistent or conflicting testimony. He also asserts that the witnesses' criminal records and the fact that he may have had personal or family connections with the witnesses does not necessarily render them non-credible, particularly where the State relied on the credibility of those same witnesses to obtain his conviction.

{¶ 7} Under then-existing R.C. 2953.21(A)(2), Mackey was required to file his petition within a 180-day time limit, which expired on or about May 2, 1999. *See Mackey* at ¶ 14. As relevant here, a court may not entertain a late petition unless "both of the following apply:" (1) that he "was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim" and (2) "[t]he petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty." R.C. 2953.23(A). These twin showings are jurisdictional requirements that must be met before a trial court may consider his otherwise-untimely petition for post-conviction relief. *State v. Baker*, 2d Dist. Montgomery No. 27596, 2017-Ohio-8602, ¶ 12.[2]

---

[2] Because Mackey has not demonstrated a constitutional basis for his petition, see ¶ 12-13 *infra*, his request should more properly have been made in the form of a motion for leave to file a motion for a new trial under Crim. R. 33. However, if treated as such, Mackey would not prevail under the more stringent analysis of that rule. A motion for leave to file a delayed motion for a new trial requires a defendant to prove "*by clear and convincing proof* [emphasis added] that he has been unavoidably prevented" from discovering the evidence, Crim R. 33(B), the motion must be filed within a reasonable time, *State v. Tubbs,* 2d Dist. Miami No. 2015-CA-14, 2016-Ohio-842, ¶¶ 16-17, and "[n]ewly discovered evidence must do more than merely impeach or contradict evidence at trial, and there must be a compelling reason to accept a recantation over the trial testimony of the witness." *State v. Howard,* 5th Dist. Stark No. 2014-CA-00136, 2015-Ohio-2053, ¶ 13, citing *Toledo v. Easterling*, 26 Ohio App.3d 59, 62, 498 N.E.2d 198 (6th Dist. 1985).

**{¶ 8}** As set forth above, the trial court ruled that Mackey's petition was untimely and that he had failed to make the showing necessary to avoid the time bar. We review this ruling for an abuse of discretion, which most often involves an "unreasonable" decision that is not supported by a sound reasoning process. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58; *Mackey* at ¶ 11. In conducting our review, we must give deference to the trial court's post-evidentiary-hearing findings and credibility determinations. *Id.* at ¶ 47; *State v. Hathaway*, 2d Dist. Greene No. 2015-CA-11, 2015-Ohio-5299, ¶ 21.

**{¶ 9}** With the foregoing standards in mind, we see no abuse of discretion in the trial court's ruling. As a threshold matter, we see no error in the trial court making credibility determinations. The central issue before the trial court was whether Mackey had been unavoidably prevented from timely obtaining the recantations. But resolution of that issue involved matters of credibility insofar as the witnesses were required to explain, either in their affidavits or at the hearing or at both times, the efforts made to obtain the recantations, the reasons for the delay, and the circumstances that led to the affidavits being provided. The trial court appears to have disbelieved the explanations, which it had discretion to do.

**{¶ 10}** We have repeatedly stated that evidence which recants testimony given at trial is "looked upon with the utmost suspicion." *See*, *e.g.*, *State v. Rossi*, 2d Dist., Montgomery No. 24740, 2012–Ohio–2545, ¶ 17. This is "because, 'where a witness makes subsequent statements directly contradicting earlier testimony the witness either is lying now, was lying then, or lied both times.' " *United States v. Earles,* 983 F.Supp. 1236, 1248 (N.D.Iowa 1997), quoting *United States v. Provost,* 969 F.2d 617, 620 (8th

Cir. 1992). We see no reason why the recanted testimony dichotomy cannot be part of the trial court's evaluation of the credibility of those witnesses. Additionally, we note that Buggs' affidavit states "I wanted to provide this information after Mr. Mackey was convicted years ago, but I never heard from his attorney," Buggs' Affidavit at ¶ 10, indicating a willingness to change his testimony years earlier. Peterson's "affidavit" does not explain when she was willing to change her story or why it took some 15 years. And at the hearing, although she testified that after the trial she wanted no involvement with the case, "I came to court, did what I had to do, and just tried to leave it alone; and I didn't want to have contact with anyone, no one." Hearing Transcript, August 3, 2015, at 25. But she has always lived in Springfield, except for a short stint in Marysville prison. *Id.* at 30. She has had contact with Mackey's family over the years and their children went to school together. *Id.* at 36. Referring to Mackey's family in the courtroom she said "these are just people that I see all the time." *Id.* at 37. When asked if there was any reason she couldn't be found she said "[n]o reason at all." *Id.* at 38.

{¶ 11} The trial court appears to have also disbelieved the substance of the recantations in the affidavits. Although the narrow issue before the trial court was whether Mackey had been unavoidably prevented from obtaining the affidavits from Peterson and Buggs, we see no reason why the trial court also could not consider their recantations to the extent as it reflects on the credibility of the hearing testimony. This is not a case where the trial court ruled based solely on paper affidavits. Rather, the trial court held an evidentiary hearing during which it heard Peterson and Buggs explain what led them to recant their trial testimony.[3] On this record, we cannot say that the trial court's conclusion,

---

[3] Although the credibility of the recantations themselves, was not the direct issue at the

that Mackey failed to prove that he was unavoidably prevented from obtaining the evidence on which he relies, was unreasonable.

{¶ 12} Finally, we note that Mackey could overcome the statutory time bar only by making the "unavoidably prevented" showing *and* by demonstrating "[b]y clear and convincing evidence that, but for constitutional error at trial" no reasonable factfinder would have found him guilty. R.C. 2953.23(A). We have recognized that "[e]vidence of perjury, without proof of knowledge on the part of the prosecution of that perjury, does not implicate constitutional rights and therefore, does not support a petition for post-conviction relief." *State v. Parker*, 2d Dist. Montgomery No. 25518, 2013-Ohio-3177, ¶ 19, citing *State v. Clark*, 2d Dist. Montgomery No. 16463, 1998 WL 271853, *2 (May 29, 1998). Mackey's petition alleges that the "Constitutional Claim" is that "petitioner's convictions were obtained with materially untruthful and false testimony." Petition at 2. It does not assert that the prosecution was aware of the allegedly false testimony.

{¶ 13} In his appellate brief, Mackey asserts that "both witnesses, Peterson and Buggs, claim that the State knew or should have known that they were providing false information at trial." (Appellant's brief at 13). But none of the affidavits attached to Mackey's post-conviction relief petition support that assertion. To the contrary, Buggs asserted in his affidavit that he implicated Mackey because Buggs had made a deal with the police and "was afraid to do or say anything that would cause the police to be

---

hearing, the trial court was in as good of a position as it ever will be in to make a credibility determination regarding the veracity of the recantations. Given that the trial court apparently disbelieved the affiants, nothing would be accomplished by declaring Mackey was unavoidably prevented from obtaining the affidavits sooner and remanding the case to the trial court for it again to reject the recantation documentation on its face, without an evidentiary hearing, on the merits as lacking in credibility.

suspicious of [him] or to break the deal with [him]." (Buggs affidavit at paragraph 4, attached to Doc. #61). Absolutely nothing in Buggs' affidavit suggests that the prosecutor knew his trial testimony was false. For her part, Peterson averred that she implicated Mackey because police told her she would go to jail and lose her children if she "didn't cooperate." (Peterson affidavit, attached to Doc. #61). Nowhere in her affidavit did Peterson aver that the prosecutor knew her trial testimony implicating Mackey was false. The failure to include such an averment in either Buggs' or Peterson's affidavit was itself enough to justify denying Mackey's post-conviction relief petition, even if the trial court had concluded that Mackey was unavoidably prevented from earlier discovery of the recantations, *without* an evidentiary hearing.[4] *Parker* at ¶ 19. For this additional reason, we cannot say the trial court erred in denying post-conviction relief under R.C. 2953.21. Accordingly, we overrule the first assignment of error.

{¶ 14} In his second assignment of error, Mackey claims the trial court erred in failing to strike an untimely post-hearing memorandum filed by the State.

{¶ 15} The record reflects that the trial court gave the parties until the end of the week to file post-hearing memos after the evidentiary hearing held on Monday, August 3, 2015. Mackey filed his memorandum on Friday, August 7, 2015. (Doc. #75). The State did not file its memorandum until February 22, 2016. (Doc. #76). On March 7, 2016,

---

[4] We note too that neither Buggs nor Peterson asserted during the post-conviction evidentiary hearing that the prosecutor knowingly presented perjured trial testimony from them. Mackey has attached apparent trial-transcript pages to his appellate brief in an effort to make this showing, but they do not establish that the prosecutor knowingly presented perjured testimony. In the referenced pages, Peterson merely testified that she agreed to work with police because they told her she could go to prison and lose custody of her children. At the time of the trafficking she was working with the police to make a controlled buy and was wearing a "wire". (Appellant's brief at Appendix B).

Mackey moved to strike the tardy memorandum. (Doc. #77). In support, he noted that the State's filing was late and that it purported to cite a hearing transcript that Mackey had not obtained prior to filing his memorandum. The trial court subsequently denied Mackey's post-conviction relief petition more than a year later on April 4, 2017, without explicitly ruling on his motion to strike.

{¶ 16} Given the trial court's failure to address the motion to strike, it implicitly was overruled. *State v. Matthews*, 2d Dist. Greene No. 2015-CA-73, 2016-Ohio-5055, ¶ 15. We review that decision for an abuse of discretion. *Furnas v. Clay Twp. Trustees*, 2d Dist. Montgomery No. 25239, 2012-Ohio-5408, ¶ 36-37. We see no abuse of discretion in the trial court's refusal to strike the State's memorandum. Other than the fact that the State filed it beyond the allowed time, Mackey's only complaint was that it purported to cite a hearing transcript, which Mackey did not have and which the State did not attach to its memorandum. But regardless of whether Mackey had access to the hearing transcript, the trial court itself had access to the testimony that it heard during the hearing. Likewise, we have access to a transcript of the evidentiary hearing on appeal. That being so, we fail to see how Mackey would have been any better off if the trial court had stricken the State's memorandum or how he was prejudiced by the failure to do so. At a minimum, the trial court did not abuse its discretion in refusing to strike the tardy memorandum. The second assignment of error is overruled.

{¶ 17} The judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.


Copies mailed to:

Andrew P. Pickering
Derek A. Farmer
Hon. Richard J. O'Neill