[Cite as *State v. Thompson*, 2019-Ohio-5140.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28449 |
| | : | |
| v. | : | Trial Court Case No. 2013-CR-377/2 |
| | : | |
| CRAIG THOMPSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of December, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Atty. Reg. No. 0095826, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

CRAIG THOMPSON, Inmate No. 721-446, Warren Correctional Institution, P.O. Box 120, Lebanon, Ohio 45036
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-appellant, Craig Thompson, appeals pro se from a judgment of the Montgomery County Court of Common Pleas overruling his petition for post-conviction relief, supplemental petitions for post-conviction relief, and his motion for new trial. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On March 5, 2013, the Montgomery County Grand Jury returned an indictment charging Thompson with one count of complicity to commit burglary in violation of R.C. 2911.12(A)(1) and R.C. 2923.03(A)(2), a felony of the second degree. The charge arose after Thompson's co-conspirator, Bradley Burns, unlawfully entered the residence of the victim, Charles Fox, with the intent to steal $50,000 from Fox's residence. It was alleged that Thompson, who had previously performed repair services at Fox's home, aided and abetted Burns by informing Burns about the location of Fox's money and by driving Burns to Fox's residence for purposes of stealing the money. In exchange, Burns was to give half of the $50,000 to Thompson.

{¶ 3} Thompson pled not guilty to the indicted charge and subsequently filed a motion to suppress. Following a suppression hearing, the trial court overruled Thompson's motion. Thompson's case was then tried to a jury in April 2014. The trial court, however, declared a mistrial after the jury reported that it was deadlocked. After the mistrial, Thompson moved to dismiss the indictment on double-jeopardy grounds. The trial court overruled Thompson's motion to dismiss, and Thompson then appealed from that decision. On appeal, this court affirmed the judgment of the trial court. *See* *State v. Thompson*, 2d Dist. Montgomery No. 26280, 2014-Ohio-5583 ("*Thompson I*").

{¶ 4} Following this court's decision in *Thompson I*, Thompson's case was again tried to a jury. Unlike his first trial, the jury at his second trial found Thompson guilty as charged. Thompson was then sentenced by the trial court on December 16, 2015. At Thompson's sentencing hearing, the trial court advised Thompson that it was not going to impose the maximum possible sentence since the court did not believe that Thompson had committed the worst form of the offense. The trial court, however, also advised Thompson that it was not going to impose the minimum possible sentence due to Thompson's history of criminal convictions between 1999 and 2001 for aggravated robbery, robbery, and complicity to commit aggravated robbery.[1] After considering Thompson's criminal history and the fact that Thompson had essentially recruited Burns for the burglary, the trial court sentenced Thompson to serve six years in prison. Thompson then appealed from his conviction and sentence, which this court affirmed in

_____

[1] Thompson's prior convictions out of Ohio occurred in Montgomery, Greene, Franklin, Miami, and Darke Counties. In proceeding with the instant appeal, on July 1, 2019, Thompson filed a motion requesting this court to take judicial notice of the various trial court dockets for these prior convictions. Thompson attached copies of the court dockets in question to his motion and noted that the dockets are the public record docket sheets that can be obtained online via the internet. On July 3, 2019, the State filed a memorandum in opposition to this court taking judicial notice of the dockets on grounds that they are not part of the trial court record. There are, however, "circumstances in which an appellate court may properly take judicial notice of publicly accessible records, including court documents and dockets, in deciding appeals." *State v. Kempton*, 4th Dist. Ross No. 15CA3489, 2018-Ohio-928, ¶ 17. *See, e.g., State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, 874 N.E.2d 516, ¶ 8, 10 (finding that a court can take judicial notice of appropriate matters, including judicial opinions and public records accessible from the internet); *Draughon v. Jenkins*, 4th Dist. Ross No. 16CA3528, 2016-Ohio-5364, ¶ 26 ("both the trial court and this court can take judicial notice of [appellant's] prior appellate cases, which are readily accessible on the internet"). Because it is a common practice for appellate courts to take judicial notice of publically accessible online court dockets, Thompson's request for this court to take judicial notice of the court dockets in question is well taken and the court dockets attached to Thompson's motion have been considered for purposes of this appeal.

*State v. Thompson*, 2d Dist. Montgomery No. 26954, 2016-Ohio-7521 ("*Thompson II*").

*Thompson's First Petition for Post-Conviction Relief*

{¶ 5} On February 16, 2017, after our decision in *Thompson II*, Thompson filed a pro se petition for post-conviction relief. In the petition, Thompson argued that he was innocent and that his conviction constituted a manifest injustice. In support of this claim, Thompson asserted that certain employment records containing Burns's work schedule were not presented at trial. Thompson maintained that evidence of Burns's work schedule would have impeached the testimony of Burns's girlfriend, Kaitlynn Kerg, who testified that she was present when Thompson and Burns planned the burglary. According to Thompson, Burns's work schedule would have proven that he and Burns were not together at the time Kerg said she overhead them planning the burglary. Thompson also argued that there was evidence not presented at trial establishing that Kerg could not identify him in a police line-up.

{¶ 6} To further support his claim of innocence, Thompson argued that there was additional evidence not presented at trial establishing that Burns's boss, Jeff Molton, was Burns's actual accomplice in the burglary. Specifically, Thompson claimed that there was evidence that Burns had contacted Molton immediately after the burglary and that Molton had a previous conviction for burglary. Thompson also claimed that, during a police interview, Molton stated that Burns had told him about the plan to burglarize Fox's residence the day before the offense occurred. Thompson did not attach any evidence to his petition supporting the claims concerning Kerg's testimony or Molton's alleged involvement in the burglary.

{¶ 7} In addition to arguing his innocence, Thompson's petition for post-conviction relief also asserted multiple ineffective assistance of counsel claims. Thompson first claimed that his trial counsel was ineffective in failing to present the evidence that would have impeached Kerg's trial testimony and established Molton as Burns's accomplice. Thompson further argued that his trial counsel was ineffective in failing to advise him to accept an alleged plea offer of three years in prison with the possibility of judicial release after six months in exchange for his guilty plea to the indicted charge. In support of these claims, Thompson attached six affidavits that generally averred his trial counsel had advised Thompson that his case was "winnable" and encouraged him to reject the plea offer in question. The six affidavits were all from friends and family members of Thompson and from Thompson himself.

{¶ 8} In his own affidavit, Thompson averred that he had relied on his counsel's advice and declined the State's plea offer without fully appreciating the strength of the evidence against him. Thompson supported this claim by alleging that his trial counsel had incorrectly advised him that certain incriminating text messages he sent to his girlfriend would be inadmissible at trial. Thompson also averred that his trial counsel had advised him that the jury would not believe Kerg's testimony about him planning the burglary with Burns due to Kerg's inability to identify him in a line-up and Burns's work schedule, but then failed to present any of that evidence at trial. Thompson claimed that had he known the text messages to his girlfriend would be admissible at trial and that his counsel was not going to present the evidence impeaching Kerg's testimony, he would have accepted the State's plea offer.

{¶ 9} On August 15, 2017, the State filed a memorandum opposing Thompson's

petition for post-conviction relief.   In its memorandum, the State represented that it had never made Thompson a plea offer of three years in prison with the possibility for judicial release after six months.   Although Thompson had attached affidavits to his petition ostensibly confirming that the aforementioned plea offer had been proposed to him, the trial court found that Thompson's argument on that issue was moot because the State had represented in its opposing memorandum that no such plea offer was ever made. The trial court also found that Thompson had failed to provide documentary evidence supporting the other claims in his petition and relied only on broad, conclusory statements that did not warrant post-conviction relief.   Therefore, on January 31, 2018, the trial court issued a decision granting summary judgment in favor of the State, which effectively denied Thompson's petition for post-conviction relief without a hearing.   Thompson then appealed from the trial court's judgment.

*Thompson's Second Petition for Post-Conviction Relief*
*and Motion for New Trial*

{¶ 10} On June 5, 2018, while the appeal from the trial court's denial of Thompson's first petition for post-conviction relief was still pending, Thompson filed a second pro se petition for post-conviction relief.   In his second petition, Thompson once again alleged that his trial counsel had provided ineffective assistance by failing to advise him to accept the alleged plea offer.   In support of this petition, Thompson attached nine supporting affidavits, six of which were the same affidavits attached to his original petition. The three new affidavits were additional affidavits from Thompson's mother and father, and an affidavit from Thompson's trial counsel, John Staton.

{¶ 11} The additional affidavits from Thompson's mother and father alleged that

they had certain communications with Thompson's trial counsel in 2017 and 2018 regarding the alleged plea offer. However, both affidavits reference a different plea offer than the one referenced in Thompson's original petition and affidavits. Specifically, the affidavit from Thompson's father averred that during a conversation with Thompson's trial counsel in February 2018, counsel advised him that the trial court judge had indicated that if Thompson would plead guilty, the judge would only sentence Thompson to five years in prison and would not schedule his sentencing until after Christmas. The affidavit of Thompson's mother averred that during a conversation with Thompson's counsel in 2017, counsel advised her that he recalled Thompson being offered three years in prison with sentencing to occur after Christmas, but that counsel had no recollection of any agreement concerning judicial release. Thompson's mother also averred that counsel had advised her that this offer was made by the trial court judge.

{¶ 12} The affidavit from Thompson's trial counsel, Staton, averred that the trial court judge had advised him off the record that if Thompson wished to enter a guilty plea, she would be willing to delay his sentencing until after Christmas. Staton also averred that the trial court judge referenced imposing either a three- or five-year prison sentence for Thompson's offense, noting that she was going to sentence Thompson to a period of incarceration that was more than the two-year sentence that was given to Burns. Staton further averred that he informed Thompson of the trial court's offer, which Thompson decided to decline in favor of a jury trial.

{¶ 13} On June 12, 2018, a few days after filing his second petition for post-conviction relief, Thompson also filed a pro se Crim.R. 33 motion for leave to file a motion for new trial and a corresponding motion for new trial. In those motions, Thompson

argued that a new trial was warranted because the trial court judge allegedly participated in the plea bargaining process during its off-record conversation with his trial counsel, which Thompson claimed violated his constitutional rights to a fair trial and due process. Thompson argued that, although the motion for new trial was filed beyond the time limitation provided in Crim.R. 33(B), the motion should nevertheless be accepted because he was unavoidably prevented from learning of the off-record conversation and from obtaining an affidavit from his attorney averring to the off-record conversation.

*Reversal of Trial Court's Decision Denying Thompson's First
Petition for Post-Conviction Relief*

{¶ 14} On November 21, 2018, five months after Thompson filed his second petition for post-conviction relief and motion for new trial, this court reversed the trial court's decision overruling Thompson's first post-conviction relief petition and remanded the matter to the trial court for further proceedings. *See State v. Thompson*, 2d Dist. Montgomery No. 27924, 2018-Ohio-4689 ("*Thompson III*"). That decision was based on the trial court's failure to provide findings of fact and conclusions of law that explained why it discounted the supporting affidavits attached to Thompson's first petition. *Id.* at ¶ 17. This court found that, in the absence of any such analysis, the trial court had abused its discretion by entering summary judgment in favor of the State without holding an evidentiary hearing on the petition. *Id.* Therefore, we remanded the matter back to the trial court for purposes of allowing the parties to renew their arguments and, if warranted by their submissions, to hold an evidentiary hearing on Thompson's petition for post-conviction relief. *Id.* at ¶ 27.

*Thompson's "Renewed" and "Amended" Petitions for*
*Post-Conviction Relief*

{¶ 15} On November 29, 2018, in response to our decision in *Thompson III*, the trial court issued an order permitting the parties to renew their arguments relating to Thompson's original petition for post-conviction relief.   Five days later, on December 4, 2018, Thompson filed a pro se "renewed" petition for post-conviction relief that asserted the same arguments raised in his original petition as well as three additional arguments. The following week, on December 11, 2018, Thompson also filed a pro se "amended" petition for post-conviction relief, in which Thompson further elaborated on the three additional arguments raised in the "renewed" petition.   The three additional arguments raised in Thompson's "renewed" and "amended" petitions were as follows:

(1)     The six-year prison sentence imposed by the trial court is "voidable" because in issuing that sentence the trial court improperly considered Thompson's prior convictions from 1999-2000, which are void due to post-release control not being properly imposed in those cases.

(2)     Thompson was unconstitutionally prevented from testifying on his own behalf at trial because the trial court permitted a stipulation, without his permission, that his prior convictions from 1999-2000 would be admissible at trial if he testified.

(3)     Trial counsel provided ineffective assistance by failing to present certain police reports as evidence in support of his motion to suppress.

{¶ 16} To his "renewed" petition, Thompson attached yet another affidavit from his

mother. Thompson also attached the original sentencing memorandum prepared by his trial counsel. To his "amended" petition, Thompson attached another affidavit from himself and two police reports related to the burglary in question.

{¶ 17} On June 13, 2019, following the filing of Thompson's "renewed" and "amended" petitions for post-conviction relief, the trial court once again issued a decision granting summary judgment in favor of the State without holding an evidentiary hearing. However, this time, the trial court's decision evaluated the credibility of the supporting affidavits attached to Thompson's original petition for post-conviction relief. Based on its evaluation, the trial court determined that all the affidavits lacked credibility.

{¶ 18} In addition to finding the affidavits lacking in credibility, the trial court also determined that there was nothing in the record supporting Thompson's claim that he was offered three years in prison with the possibility of judicial release after six months in exchange for his guilty plea. In referencing Thompson's second petition, the trial court noted that it had never made any ex parte plea offer to Thompson or Thompson's counsel. The trial court also noted that even if the averments in Thompson's supporting affidavits were true, and that the plea offer in question had actually been made, trial counsel's advice to decline the offer would not constitute ineffective assistance because that advice was a reasonable judgment call based on the fact that Thompson's first trial had ended in a hung jury.

{¶ 19} The trial court further found that Thompson's claim that his conviction constituted a manifest injustice due to the omission of the evidence impeaching Kerg and showing Molton as Burns's accomplice could have been raised during his direct appeal and thus was barred by the doctrine of res judicata. The trial court also found that the

failure of Thompson's counsel to present that evidence at trial was a strategic choice related to trial strategy that could not form the basis of an ineffective assistance claim. Additionally, the trial court found that Thompson failed to establish he was prejudiced by the omission of that evidence because the evidence did not necessarily prove Thompson's innocence.   The trial court denied all the other claims raised in Thompson's "renewed" and "amended" petitions on the basis of untimeliness and res judicata.

{¶ 20} In addition to overruling Thompson's petitions for post-conviction relief, the trial court also overruled Thompson's Crim.R. 33 motion for new trial on grounds that it was untimely.   In so holding, the trial court found that the new evidence Thompson claimed he was unavoidably prevented from discovering, i.e., his trial counsel's off-record conversation with the trial court and counsel's accompanying affidavit averring to the off-record conversation, did not point to any irregularity in the proceedings that warranted a new trial.

{¶ 21} Thompson now appeals from the trial court's decision denying his petitions for post-conviction relief and motion for new trial.   In support of his appeal, Thompson has raised seven assignments of error for review.   For purposes of clarity and ease of discussion, we will address Thompson's assignments of error out of order.

**Standard of Review**

{¶ 22} This court reviews the denial of a petition for post-conviction relief for which no hearing was held under an abuse-of-discretion standard.   *State v. Harden*, 2d Dist. Montgomery No. 23617, 2010-Ohio-3343, ¶ 10.   The same abuse-of-discretion standard also applies to this court's review of a trial court's decision on a Crim.R. 33 motion for

new trial.  *State v. Gillispie*, 2d Dist. Montgomery No. 24456, 2012-Ohio-1656, ¶ 31, citing *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990), paragraph one of the syllabus.  (Other citation omitted.)  "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary."  *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.  An abuse of discretion "most often involves an 'unreasonable' decision that is not supported by a sound reasoning process."  *State v. Mackey*, 2018-Ohio-516, 106 N.E.3d 241, ¶ 8 (2d Dist.), citing *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58.  "Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court."  *Darmond* at ¶ 34, citing *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14.

**Fourth Assignment of Error**

{¶ 23} Under his fourth assignment of error, Thompson contends that his trial counsel provided ineffective assistance by failing to advise him to accept a plea offer of three years in prison with a possibility of judicial release after six months.  Because this is an appeal from the trial court's decision overruling his various petitions for post-conviction relief, we construe his assignment of error as challenging the trial court's denial of that ineffective assistance claim when ruling on his petitions.  Upon review, we do not find that the trial court abused its discretion in denying that claim.

{¶ 24} To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable

probability that, but for the errors, the outcome of the case would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

**{¶ 25}** "With respect to claims of ineffective assistance regarding plea negotiations, we have held that a defendant must demonstrate that (1) he or she was offered a plea agreement; (2) his or her defense counsel provided legally unsound advice by recommending that he reject the offer; (3) he or she would have entered into the agreement but for counsel's unsound advice; (4) the offer would not have been withdrawn; (5) the trial court would have approved the agreement; and (6) the sentence pursuant to the agreement would have been more favorable than the sentence actually imposed by the court." *State v. Easterling*, 2019-Ohio-2470, __ N.E.3d __, ¶ 24 (2d Dist.), citing *Thompson III*, 2d Dist. Montgomery No. 27924, 2018-Ohio-4689, at ¶ 11. (Other citations omitted.)

**{¶ 26}** " '[I]n a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness.' " *State v. Kapper*, 5 Ohio St.3d 36, 38, 448 N.E.2d 823 (1983), quoting *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980), syllabus. "A trial court may dismiss a petition for post[-]conviction relief without a hearing 'where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief.' " *State v. Jones*, 2d Dist. Clark No. 2018-CA-119, 2019-Ohio-2250, ¶ 13, quoting *State v. Calhoun*,

86 Ohio St.3d 279, 714 N.E.2d 905 (1999), paragraph two of the syllabus. (Other citation omitted.) When making such a determination, a trial court has the discretion to weigh the credibility of any affidavits submitted with the petition. *Calhoun* at 284. In doing so, the trial court should consider the following relevant factors:

> (1) whether the judge reviewing the post[-]conviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony.

*Id.* at 285, citing *State v. Moore*, 99 Ohio App.3d 748, 754-756, 651 N.E.2d 1319 (1st Dist.1994).

{¶ 27} "Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility." *Id.* "Such a decision should be within the discretion of the trial court." *Id.* "A trial court that discounts the credibility of sworn affidavits should include an explanation of its basis for doing so in its findings of fact and conclusions of law, in order that meaningful appellate review may occur." *Id.*

{¶ 28} In this case, the trial court evaluated the credibility of the affidavits attached

to Thompson's original petition for post-conviction relief that supported his claim that his trial counsel had advised him to reject a plea offer of three years in prison with the possibility of judicial release after six months. The trial court determined that the affidavits lacked credibility because the affiants were comprised of Thompson's friends and family members and Thompson himself, all of whom had an interest in Thompson succeeding on his petition for post-conviction relief. The trial court also found that the affidavits lacked credibility because they contained substantially similar language and were based on hearsay, as the court found the averments were not based on personal conversations with Thompson's trial counsel.

{¶ 29} With the exception of Thompson's affidavit and the affidavit of his mother, Crystal Reed, who averred to being present when trial counsel advised Thompson of the plea offer in question, the record supports the trial court's findings. Although the affidavits from Thompson and his mother are not based on hearsay, the fact remains that both Thompson and his mother have an obvious interest in Thompson succeeding on the petition.

{¶ 30} The trial court also found other factors that mitigated against the credibility of the affidavits. For example, the court noted that due to Thompson's numerous prior felony convictions, Thompson was subject to a mandatory sentence, which made his claim that any plea offer included the possibility of judicial release simply incredible. The trial court also noted that it puts all plea offers on the record whether they are accepted or not, and that the trial court could not find any record of Thompson being offered a three-year sentence with the possibility of judicial release after six months.

{¶ 31} The trial court further noted that Thompson's second petition for post-

conviction relief changed the narrative regarding the alleged plea offer. Specifically, the trial court found that Thompson's original petition and supporting affidavits alleged that the plea offer at issue was made by the State while his second petition and new supporting affidavits alleged that the trial court judge made the plea offer. The new affidavits also presented different offers of three and five years in prison without any mention of judicial release, but a promise of sentencing after Christmas. Notably, the affidavit of Thompson's trial counsel that was attached to Thompson's second petition made no mention of a plea offer of three years in prison with the possibility of judicial release after six months. Given these discrepancies among the affidavits, it was not unreasonable for the trial court to find that the affidavits lacked credibility.

{¶ 32} Because the trial court provided a reasonable explanation as to why it discounted the credibility of the supporting affidavits, we do not find that the trial court abused its discretion in denying the ineffective assistance claim at issue. Simply stated, other than these affidavits, which the trial court did not find credible, Thompson provided no other evidence supporting his claim that he was offered three years in prison with the possibility of judicial release after six months or that his trial counsel advised him to reject that offer. Therefore, based on the facts and circumstances here, we see no reason to disturb the judgment of the trial court.

{¶ 33} Moreover, even if the affidavits in question had been deemed credible, we agree with the trial court's conclusion that Thompson's trial counsel's advice to decline such a plea offer would not have established an ineffective assistance of counsel claim. That is, under these specific facts, we cannot say that such a recommendation would have fallen below an objective standard of reasonable professional assistance. This is

especially true considering that Thompson's first trial had ended in a hung jury. *See State v. Sexton*, 3d Dist. Union No. 14-13-25, 2015-Ohio-934, ¶ 100 ("courts do not find ineffective assistance for advising the defendant not to take a plea bargain absent evidence that the counsel's advice fell below the standard of reasonable professional assistance and that it resulted in prejudice"); *State v. Doty*, 12th Dist. Clermont No. CA2018-07-055, 2019-Ohio-917, ¶ 17, quoting *State v. Shugart*, 7th Dist. Mahoning No. 08 MA 238, 2009-Ohio-6807, ¶ 37 ("a defendant's trial counsel's advice to reject a plea deal in a criminal case is also not ineffective assistance of counsel[;] * * * '[t]he attorney is there to give informed advice, to relate worse case scenarios to his [or her] client, and to make a recommendation regardless of whether it makes the client upset.' ").

**{¶ 34}** For the foregoing reasons, Thompson's fourth assignment of error is overruled.

**Fifth and Sixth Assignments of Error**

**{¶ 35}** Under his fifth and sixth assignments of error, Thompson challenges the trial court's denial of the following two claims raised in his "renewed" and "amended" petitions for post-conviction relief:

(1)     The six-year prison sentence imposed by the trial court is "voidable" because in issuing that sentence the trial court improperly considered Thompson's prior convictions from 1999-2000, which are void due to post-release control not being properly imposed in those cases.

(2)     Thompson was unconstitutionally prevented from testifying on his

own behalf at trial because the trial court permitted a stipulation, without his permission, that his prior convictions from 1999-2000 would be admissible at trial if he testified.

{¶ 36} The trial court denied the aforementioned claims on grounds that they were untimely and barred by the doctrine of res judicata. Because the trial court issued an order on November 29, 2018, permitting Thompson to renew the arguments in his petition for post-conviction relief and specifically provided Thompson with 30 days "to file any additional arguments and materials," it is arguable that these additional claims, which were filed within that timeframe, were not untimely. However, even if the claims were timely filed, they are otherwise barred by the doctrine of res judicata.

{¶ 37} As noted in *State v. Goldwire*, 2d Dist. Montgomery No. 20838, 2005-Ohio-5784:

"The most significant restriction on Ohio's statutory procedure for post-conviction relief is that the doctrine of res judicata requires that the claim[s] presented in support of the petition represent error supported by evidence outside the record generated by the direct criminal proceedings." *State v. Monroe*, [10th Dist. Franklin No.] 04AP-658, 2005-Ohio-5242. "Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment." *State v. Perry*, [10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967)]. "Our

statutes do not contemplate relitigation of those claims in post[-]conviction proceedings where there are no allegations to show that they could not have been fully adjudicated by the judgment of conviction and an appeal therefrom." *Id.* "To overcome the res judicata bar, the petitioner must produce new evidence that renders the judgment void or voidable, and show that he could not have appealed the claim based upon information contained in the original record." *State v. Aldridge*, [120 Ohio App.3d 122, 151, 697 N.E.2d 228 (2d Dist.1997).] " 'Res judicata also implicitly bars a petitioner from "repackaging" evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal.['] " *Monroe*.

*Goldwire* at ¶ 11.

{¶ 38} Upon review, we find that both claims at issue could have been fully adjudicated in Thompson's direct appeal based upon information contained in the original record. Because these claims could have been, but were not raised in Thompson's direct appeal, the doctrine of res judicata bars Thompson from raising them in his "renewed" and "amended" petitions for post-conviction relief.

{¶ 39} With regard to Thompson's claim that his six-year prison sentence was "voidable," we note that "[a]rguments challenging the imposition of a sentence that is voidable are barred by the doctrine of res judicata if not raised on direct appeal." (Citations omitted.) *State v. Simons*, 2d Dist. Champaign No. 2013 CA 5, 2013-Ohio-3654, ¶ 42. In other words, " 'defendants with a voidable sentence are entitled to re-sentencing only upon a successful challenge on direct appeal.' " *Id.* at ¶ 40, quoting

*State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 30.

**{¶ 40}** Furthermore, the reasoning behind Thompson's belief that his six-year prison sentence was voidable is flawed. As previously noted, Thompson believed his sentence was voidable because, at sentencing, the trial court considered his prior convictions from 1999 to 2000, which Thompson claims were void due to the sentencing courts in those cases failing to properly impose post-release control. But, even assuming post-release control was not properly imposed for those convictions, such an error would only render the post-release control portion of the sentences void, not the merits of the prior convictions. *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 26. *See also State v. Carter*, 8th Dist. Nos. 96338, 96339, 96340, 96342, 96343, 96344, 96345, 96346, 2011-Ohio-4509, ¶ 9 (retroactive application of *Fischer* is appropriate). Therefore, the prior convictions considered by the trial court were not void and were properly considered at Thompson's sentencing.

**{¶ 41}** We also note that, in his appellate brief, Thompson raised the "voidable" sentence argument in the form of an ineffective assistance of counsel claim. Specifically, Thompson asserted that his trial counsel provided ineffective assistance by failing to object when the trial court considered the allegedly void prior convictions at sentencing. This nuance in Thompson's argument is inapposite, as the ineffective-assistance version of the claim is also barred by res judicata. This is because that claim was also based on matters in the record and could have been raised in Thompson's direct appeal.

**{¶ 42}** The ineffective-assistance version of the "voidable" sentence argument was also never specifically raised in any of Thompson's petitions for post-conviction relief. Therefore, because that claim was not raised previously below, it may not be considered

for the first time on appeal. *State v. Webb*, 2d Dist. Darke No. 06-CA-1694, 2007-Ohio-3446, ¶ 1, 10, and 27 (issues raised on appeal that were not the subject of appellant's petition for post-conviction relief may not be considered for the first time on appeal).

{¶ 43} For the foregoing reasons, the trial court did not abuse its discretion in denying the two claims at issue on the basis of res judicata. This holds true regardless of whether those claims were timely filed. Therefore, Thompson's fifth, and sixth assignments of error are overruled.

**Third Assignment of Error**

{¶ 44} Under his third assignment of error, Thompson contends that his trial counsel provided ineffective assistance by failing to admit certain police reports into evidence at his motion to suppress hearing. Again, because this is an appeal from the trial court's decision overruling Thompson's various petitions for post-conviction relief, we construe his assignment of error as challenging the trial court's denial of that ineffective assistance claim when ruling on his petition. Upon review, we do not find that the trial court abused its discretion in denying Thompson's claim.

{¶ 45} Thompson argues that the police reports at issue established that, on the night of the burglary in question, an investigating officer conducted a traffic stop on his vehicle and discovered incriminating evidence—an invoice connecting him to the victim of the burglary—through an unlawful search of his vehicle. Although the investigating officer testified that Thompson gave the officer consent to search his vehicle, Thompson maintains that the police reports in question established that his consent only extended to permitting the officer to retrieve a marijuana pipe from his vehicle. Thompson also

claims that the police reports established that the officer could not have lawfully discovered the incriminating invoice in plain view because the police reports stated that the officer located the invoice "in" a clipboard on his vehicle's back seat as opposed to "on" the clipboard. On that basis, Thompson claims his trial counsel was ineffective in failing to present the police reports as evidence establishing that the incriminating invoice was discovered through an unlawful search of his vehicle.

{¶ 46} Thompson raised this claim in his "renewed" and "amended" petitions for post-conviction relief and attached the corresponding police reports as evidence. The trial court denied the claim on the basis of untimeliness and res judicata. However, given the trial court's order permitting Thompson to file additional arguments after November 29, 2018, and given that the police reports in question were not part of the record on appeal and were allegedly not accessible to Thompson until after his direct appeal, we find that the trial court should have reviewed the merits of Thompson's claim.

{¶ 47} Nevertheless, even when reviewing the merits of Thompson's claim, we do not find that the trial court's decision denying the claim was an abuse of discretion. This is because the decision of Thompson's counsel not to admit the police reports into evidence involved trial strategy, which cannot form the basis of an ineffective assistance claim. *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 37 (2d Dist.), citing *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 ("a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel"); *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 127 (decisions about what evidence to present primarily involve trial strategy and tactics and are committed to counsel's professional judgment); *State v. Farris*, 2d

Dist. Clark No. 2003 CA 77, 2004-Ohio-5980, ¶ 56 (failure to offer evidence was a matter of trial strategy that did not establish ineffective assistance of counsel).

{¶ 48} Contrary to Thompson's claim otherwise, the police reports in question did not establish that Thompson only gave the investigating officer consent to retrieve a marijuana pipe from his vehicle as opposed to permitting the officer to conduct a full search. The police reports merely indicated that Thompson advised the officer that there was a marijuana pipe in the vehicle and that the officer located the pipe where Thompson said it would be. There was no information in the police reports regarding what level of consent was given. Because the investigating officer testified at the suppression hearing that Thompson had given him permission to search his vehicle and to obtain anything out of his vehicle, *see* Suppression Hearing Trans. (June 6, 2013), p. 106, and due to the lack of any contradictory information in the police report, Thompson's trial counsel could have reasonably determined that the police reports did not have any evidentiary value. Therefore, we cannot say that counsel's decision not to admit the reports as evidence fell below an objective standard of reasonable representation. Moreover, even if Thompson's trial counsel had submitted the police reports in an attempt to refute the investigating officer's claim that Thompson had consented to a search of his vehicle, Thompson cannot demonstrate that this would have changed the outcome of the suppression proceeding because the trial court simply might have chosen to believe the testimony of the investigating officer. Accordingly, we do not find that the trial court abused its discretion in denying the ineffective assistance claim at issue, even though its denial was based on other grounds.

{¶ 49} Thompson's third assignment of error is overruled.

**First Assignment of Error**

{¶ 50} Under his first assignment of error, Thompson argues that the trial court abused its discretion by dismissing several of the claims in his petition for post-conviction relief as untimely. As previously noted, the trial court's untimeliness finding pertained to the additional claims raised in Thompson's "renewed" and "amended" petitions. Based on our analysis of Thompson's third, fifth, and sixth assignments of error above, the timeliness issue is moot and need not be addressed under the confines of Thompson's first assignment of error.

**Second Assignment of Error**

{¶ 51} Under his second assignment of error, Thompson argues that the trial court abused its discretion by denying his petitions for post-conviction relief without an evidentiary hearing. We disagree.

{¶ 52} " '[A] criminal defendant seeking to challenge his conviction through a petition for post[-]conviction relief is not automatically entitled to a hearing.' " *State v. Clark*, 2017-Ohio-120, 80 N.E.3d 1251, ¶ 19 (2d Dist.), quoting *Calhoun*, 86 Ohio St.3d at 282, 714 N.E.2d 905. Instead, the trial court must first determine "whether there are substantive grounds for relief * * *, i.e., whether there are grounds to believe that 'there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States.' " (Emphasis omitted.) *Calhoun* at 282-283, quoting R.C. 2952.21(A); R.C. 2953.21(D). *Accord State v. Stoermer*, 2d Dist. Clark No. 2019-CA-23, 2019-Ohio-3804, ¶ 16. "[N]o

hearing is necessary, if the petition and its supporting evidentiary documents do not contain operative facts that would, if proven, establish a substantive ground for relief." (Citation omitted.) *State v. Kuck*, 2d Dist. Darke No. 2017-CA-15, 2018-Ohio-3290, ¶ 6. In order to be entitled to a hearing, the petitioner bears the initial burden to provide evidentiary materials containing sufficient operative facts to demonstrate a claim of constitutional error. *State v. Wood*, 2d Dist. Clark No. 2018-CA-1, 2018-Ohio-3204, ¶ 23, citing *Kapper*, 5 Ohio St.3d at 38-39, 448 N.E.2d 823.

{¶ 53} "Broad assertions of prejudice and general conclusory allegations * * * are an inadequate basis upon which to impose an evidentiary hearing." (Citations omitted) *State v. Padgett*, 2d Dist. Montgomery No. 17658, 1999 WL 1127398, *3 (Dec. 10, 1999). *Accord State v. Jordan*, 2d Dist. Montgomery No. 27208, 2017-Ohio-7342, ¶ 12. When a petition does not include any affidavits or other evidentiary materials supporting the claims in the petition, the trial court is authorized to dismiss the petition without a hearing. *State v. Wilkins*, 127 Ohio App.3d 306, 310, 712 N.E.2d 1255 (2d Dist.1998), citing *State v. Pankey*, 68 Ohio St.2d 58, 59, 428 N.E.2d 413 (1981). *See also Kapper* at 39 and *Kuck* at ¶ 17-19.

{¶ 54} Upon review, we do not find that the trial court abused its discretion in denying Thompson's petitions without an evidentiary hearing. The ineffective assistance claims raised in Thompson's petitions are either not supported by credible affidavits or any other evidentiary materials, or the claims simply fail to allege conduct that amounts to deficient performance on the part of trial counsel. The other claims asserted in Thompson's petition—that his conviction constituted a manifest injustice, his sentence was "voidable," and that he was prevented from testifying on his own behalf at trial—are

all barred by res judicata because they could have been, but were not, adjudicated in his direct appeal. Because Thompson failed his burden to establish substantive grounds warranting post-conviction relief, a hearing on his petitions was not required.

{¶ 55} Thompson's second assignment of error is overruled.

**Seventh Assignment of Error**

{¶ 56} Under his seventh assignment of error, Thompson argues that he was prevented from receiving a fair trial as a result of the trial court allegedly participating in the plea bargaining process. Because Thompson raised this claim in his motion for new trial, Thompson is essentially challenging the trial court's decision overruling his motion for new trial. As previously noted, the trial court overruled Thompson's motion for new trial on grounds of untimeliness.

{¶ 57} Thompson's motion for new trial was brought under Crim.R. 33(A)(1) and (A)(6), which provide that a new trial may be granted for the following reasons:

(1)     Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;

* * *

(6)     When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. * * *

{¶ 58} Except for motions based on newly discovered evidence under Crim.R. 33(A)(6), a motion for new trial "shall be filed within fourteen days after the verdict was

rendered * * * unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial * * * [.]" Crim.R. 33(B). In contrast, a motion for new trial based on newly discovered evidence "shall be filed within one hundred twenty days after the day upon which the verdict was rendered * * * [.]" *Id.*

{¶ 59} To obtain leave to file a motion for new trial after the expiration of the time periods specified in Crim.R 33(B), a defendant must demonstrate by clear and convincing evidence that he or she was unavoidably prevented from timely filing the motion for a new trial or discovering the new evidence within the time period provided by Crim.R. 33(B). *State v. Warwick*, 2d Dist. Champaign No. 01CA33, 2002 WL 1585663, *2 (July 19, 2002). " '[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence.' " *State v. Parker*, 178 Ohio App.3d 574, 2008-Ohio-5178, 899 N.E.2d 183, ¶ 16 (2d Dist.), quoting *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (10th Dist.1984). "A defendant is entitled to a hearing on a motion for leave to seek a new trial if he submits documents that on their face support his claim of being unavoidably prevented from meeting Crim.R. 33's time requirement." *State v. Hiler*, 2d Dist. Montgomery No. 27364, 2017-Ohio-7636, ¶ 12.

{¶ 60} In this case, Thompson's motion for leave/motion for new trial was filed on June 12, 2018, over two years after his conviction. Therefore, there is no question that the motion was filed beyond the time limitations specified in Crim.R. 33(B). In seeking

leave to file his motion out of time, Thompson attempted to show that he was unavoidably prevented from filing his motion any earlier because he claims that he did not know about the off-record conversation until he secured an affidavit from his trial counsel in February 2018. Thompson claims the off-record conversation averred to by his trial counsel establishes that the trial court improperly participated in the plea bargaining process and was biased against him prior to trial. Thompson is wrong.

{¶ 61} The trial court found, and we agree, that the affidavit indicated only that the trial court had an off-record conversation with counsel regarding possible general options for resolving Thompson's case and that the trial court merely discussed the possible sentences it would impose if Thompson decided to plead guilty. The affidavit did not establish, as Thompson claims, that the trial court engaged in plea negotiations or that the off-record conversation otherwise prevented Thompson from receiving a fair trial. Therefore, since the affidavit in no way warranted a new trial being granted, Thompson's delay in obtaining the affidavit could not be a basis on which to make a finding of unavoidable delay for purposes of accepting his untimely motion for new trial. Accordingly, the trial court did not abuse its discretion in overruling the motion as untimely.

{¶ 62} Thompson's seventh assignment of error is overruled.

## Conclusion

{¶ 63} Having overruled all assignments of error raised by Thompson, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.


Copies sent to:

Mathias H. Heck, Jr.
Michael P. Allen
Craig Thompson
Hon. Barbara P. Gorman