[Cite as *Rose v. Tievsky*, 2021-Ohio-3051.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| BERNARD JOSEPH ROSE, M.D. | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 29024 |
| | : | |
| v. | : | Trial Court Case No. 2020-CV-2018 |
| | : | |
| ANDREW TIEVSKY, M.D., et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of September, 2021.

. . . . . . . . . . .

BERNARD JOSEPH ROSE, M.D., 1318 Laurelwood Road, Kettering, Ohio 45409
    Plaintiff-Appellant, Pro Se

MATTHEW L. SCHRADER, Atty. Reg. No. 0074230, 200 Civic Center Drive, Suite 800,
Columbus, Ohio 43215
    Attorney for Defendants-Appellees

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} This matter is before us on the pro se appeal of Plaintiff-Appellant, Bernard Rose, M.D., from an order granting a motion to dismiss and a motion for summary judgment filed by Defendants-Appellees, Andrew Tievsky, M.D., and Cleveland Clinic Foundation (CCF) (collectively "Appellees"). The trial court dismissed the case with prejudice because: (1) Dr. Rose failed to file an affidavit of merit as required by Civ.R. 10(D)(2)(a) and did not move for an extension of time to do so; (2) Dr. Rose failed to comply with the statute of limitations in R.C. 2305.113(A) and the requirements of Ohio's savings statute, R.C. 2305.19(A); (3) the statute of limitations was not tolled under R.C. R.C. 2305.113(C) and R.C.2305.16 for persons of "unsound mind"; and (4) Dr. Rose's claims were barred because they were not brought within the four-year statute of repose in R.C. 2305.113(C).

{¶ 2} According to Dr. Rose, he was not required to provide an affidavit of merit because his claims were based on negligence, and the matters in question were within the common knowledge of the trier of fact. Dr. Rose further contends that the statute of limitations for his claims should have been that set forth in R.C. 2305.10(B)(1), which pertains to bodily injury caused by hazardous or toxic chemicals, rather than the statute of limitations for medical claims.

{¶ 3} Dr. Rose also argues that he brought his claims within the proper time after he was informed by a "competent medical authority" that he had an injury related to carbon monoxide exposure, or within the time that, in the exercise of reasonable care and diligence, he should have discovered the resulting injury. In addition, Dr. Rose argues that the statute of limitations should have been tolled because he was of unsound mind.

Finally, Dr. Rose mentions certain procedural failings, like the fact that the trial court required him to offer proof when the allegations in the complaint should have been construed as true. Allegedly, the trial court also failed to consider an affidavit that Dr. Rose did file.

{¶ 4} After reviewing the record, we conclude that Dr. Rose's claims were "medical claims" under R.C. 2305.113(E)(3), and not claims for bodily injury due to exposure to hazardous or toxic chemicals or claims for negligence. The one-year statute of limitations in R.C. 2305.113(A) therefore applied. Furthermore, the trial court did not err in fixing the date upon which Dr. Rose's cause of action accrued, which was several years before Dr. Rose refiled his complaint. Dr. Rose also could not salvage his claims based on tolling under R.C. 2305.113(C) and R.C. 2305.16, because there were no genuine material issues of fact concerning whether Dr. Rose was of unsound mind when the cause of action accrued or thereafter.

{¶ 5} The trial court did err in finding that Dr. Rose's medical claims were barred because he failed to refile them until 21 months after his original claims were dismissed and that, as a result, the requirements of the savings statute in R.C. 2305.19(A) were not satisfied. Contrary to the court's holding, R.C. 2305.19(A) did not apply. Any error was harmless, however, because Dr. Rose's claims were barred by R.C. 2305.113(C).

{¶ 6} R.C. 2305.113(C) is a statute of repose, which bars any medical claims that are not filed within four years after the acts or omissions causing an injury. A plaintiff, therefore, may not take advantage of the savings statute in R.C. 2305.19(A) to refile a medical claim after the applicable one-year statute of limitations in R.C. 2305.113(A) has expired if the four-year statute of repose for medical claims has also expired. Here, Dr.

Rose's claims were barred because the one-year statute of limitations and the four-year repose period had both expired before Dr. Rose refiled his complaint. In fact, Dr. Rose refiled the complaint more than seven years after the occurrence of the act or omission constituting the alleged basis of his medical claims. Consequently, Dr. Rose could not take advantage of the savings provision in R.C. 2305.19(A).

{¶ 7} We further conclude that the trial court correctly dismissed Dr. Rose's claims because he failed either to file a proper affidavit of merit or to ask for an extension for filing one. Finally, the trial court did not commit any error in requiring proof beyond the complaint's allegations or in considering such evidence. Accordingly, the judgment of the trial court will be affirmed.

## I.   Facts and Course of Proceedings

{¶ 8} This case began with an action that was filed and dismissed in 2018, and was then refiled. Concerning the first case, Dr. Rose filed a pro se medical malpractice action against Dr. Tievsky and CCF on June 15, 2018. That action was designated as Montgomery C.P. No. 2018-CV-2727.[1]

{¶ 9} The 2018 complaint was presented in narrative form. According to the complaint, Dr. Rose was hospitalized at Glenbeigh Rehabilitation Center in 2013. During the hospitalization, a doctor (Dr. Zinni) ordered an MRI because Dr. Rose was having

---

[1] Relevant pleadings from that case were attached to Appellees' Summary Judgment Motion. Tievsky/CCF Motion for Summary Judgment (July 10, 2020). We can also take judicial notice of judicial opinions and public records accessible on the internet. *E.g., State v. Thompson*, 2d Dist. Montgomery No. 28449, 2019-Ohio-5140, ¶ 4, fn. 1. The records of the Montgomery County Common Pleas Court are readily accessible on the Clerk of Courts' website.

confusion issues and bizarre behavior.   2018 Complaint, p. 1.[2]   The MRI was done on May 3, 2013, and Dr. Tievsky, a neurologist with the Cleveland Health System, read the MRI as normal.   *Id.*   *See also* Ashtabula County Medical Center MRI, "Final Report," p. 1.

{¶ 10} In contrast, an August 2011 MRI of Dr. Rose, which was attached as part of the complaint, indicated some changes that might be seen with "hypoxic/anoxic brain injury."   August 1, 2011 University Radiology Associates Diagnostic Radiology Interpretation of Films for: Linder Center of Hope, p. 1.

{¶ 11} Dr. Rose also attached a Final Report of Cleveland Clinic Star Imaging to the 2018 Complaint.   The exam date is listed as May 24, 2017, and the history given was of a "58 year old man with chronic heartburn, monoxide exposure, serum imbalance, and low sodium."   *Id.* at p. 1.     On that day, an MRI was done with and without contrast, and the stated impression was: "Abnormal signal intensity at the interior basil ganglia bilaterally with evidence for magnetic susceptibility artifact.   The findings may be related to mineralization. * * * [A] previous insult such as from carbon monoxide exposure could also have this appearance."   *Id.* at p. 2.

{¶ 12} According to the 2018 Complaint, Dr. Rose believed the pathologic changes shown by the 2011 MRI had caused the problems he had during the 2013 hospitalization at Glenbeigh.   Dr. Rose alleged that Dr. Tievsky "misdiagnosed pathologic changes in the Globus Pallidus area" and "failed to perform acceptable medical practice by his failure to compare previously abnormal images."   2018 Complaint at p. 1.   Dr. Rose further alleged that CCF was "guilty of failure to follow acceptable care by not obtaining previous

---

[2]  Dr. Zinni is not a defendant in this case.

medical images from the University of Cincinnati." *Id.* The implication in the complaint was that Dr. Rose's conduct while at Glenbeigh in 2013 actually resulted from carbon monoxide poisoning, rather than psychological problems and/or substance abuse, and that the failure to diagnose caused permanent damage. *Id.*

{¶ 13} On July 17, 2018, Dr. Tievsky filed a motion to dismiss the complaint based on the fact that Dr. Rose had failed to file an affidavit of merit as required by Civ.R.10(D)(2). The trial court agreed, finding that the affidavit in question had been authored by Dr. Penny, a Ph.D., and not by a physician, as the rule required. The court therefore dismissed Dr. Rose's claims without prejudice on August 22, 2018. Dr. Rose then appealed to our court.

{¶ 14} We dismissed Dr. Rose's appeal in January 2019, because the dismissal for lack of an appropriate affidavit of merit was without prejudice, did not prevent refiling, and was not a final appealable order. *See Rose v. Tievsky*, 2d Dist. Montgomery No. 28184 (Decision and Final Judgment Entry, Jan. 16, 2019), p. 3. In a footnote, we also mentioned Appellees' argument that, under R.C. 2305.19(A), Dr. Rose could refile his claims within one year after the trial court's August 2018 decision and entry. *Id.* at p. 4, fn. 1.

{¶ 15} Rather than refiling, Dr. Rose appealed our decision to the Supreme Court of Ohio, which declined jurisdiction over the appeal on May 15, 2019. Dr. Rose then refiled another pro se medical malpractice action (the current action), and again included Dr. Tievsky and CCF as defendants. *See* 2020 Complaint (May 14, 2020). Again, Dr. Rose failed to attach an affidavit of merit and did not ask for an extension of time to do so. The 2020 Complaint also attached documents that were very similar to those

included with the 2018 Complaint.

{¶ 16} On June 12, 2020, Appellees filed a motion to dismiss, contending the action should be dismissed because Dr. Rose failed to file an affidavit of merit and did not request an extension of time to do so. They also filed an answer and raised various affirmative defenses, including that the action was barred by the statute of limitations and by the statute of repose. Tievsky/CCF Answer (June 12, 2020), p. 2. On June 15, 2020, the court set a briefing schedule for the motion to dismiss.

{¶ 17} Dr. Rose filed a response to the motion to dismiss. In his memorandum, Dr. Rose argued that he did not need an expert witness because Appellees' failure to obtain and review the prior MRI report was "simple" negligence. Rose Reply (July 10, 2020), p. 1-2. Dr. Rose also raised the issue that the legislation requiring an affidavit of merit prevented him from receiving a fair trial because it required him to spend significant sums of money on an expert. Id. at p. 3-4. Finally, Dr. Rose quoted from a report of an affidavit of merit from Dr. DiNella, who was apparently a board certified psychiatrist.

{¶ 18} The quoted portion stated only as follows:

The treating doctors' failure to carry out their duty to accurately diagnose and treat Dr. Rose directly resulted in harm to him emotionally, medically and financially. Due to the damage to his reputation, his income as a physician dropped by $200,000 that year and took several years to recover. It also caused emotional damage to him due to the damage of his reputation.

Rose Reply at p. 6.

{¶ 19} On the same day that Dr. Rose responded to the motion to dismiss,

Appellees filed a motion for summary judgment, contending that the action was barred because it was not filed within one year after the original action was dismissed. As noted, Appellees also attached certified copies of the relevant pleadings in the 2018 case. The trial court then established deadlines for filing documents relevant to the summary judgment motion.

{¶ 20} On July 24, 2020, Appellees filed a memorandum replying to Dr. Rose's response to their motion to dismiss; they also included a motion to strike the "proffered" affidavit of Dr. DiNella because it failed to comply with Evid.R. 601(D) and Civ.R. 10(D)(2). After receiving an extension of time to file a surreply to the motion to dismiss and two extensions to reply to the summary judgment motion, Dr. Rose filed a memorandum on September 28, 2020. On the same day, he also filed a lengthy affidavit. Appellees filed a reply on October 13, 2020.

{¶ 21} The trial court then issued an order granting Appellees' motions and dismissing Dr. Rose's action with prejudice. Order (December 29, 2020). The court concluded that Dr. Rose's claims were medical claims governed by the statute of limitations in R.C. 2305.113(A) and that Dr. Rose was required to file an affidavit of merit under Civ.R. 10(D)(2) or to ask for an extension of time. Because he failed to do so, the trial court granted the motion to dismiss. *Id.* at p. 10-12.

{¶ 22} Additionally, the court found that Dr. Rose failed to bring his medical claims within the one-year statute of limitations in R.C. 2305.113(A) and that the tolling provision in R.C. 2305.113(C) for persons of "unsound mind" did not apply. The court further held that the action was barred by the statute of repose in R.C. 2305.113(C), and that the savings statute in R.C. 2305.19(A) could not be used because Dr. Rose's original

complaint was barred by the statute of limitations. In addition, the second complaint was not timely filed under R.C. 2305.19(A). Based on these findings, the court granted summary judgment in Appellees' favor and dismissed Dr. Rose's claims with prejudice. On January 27, 2021, Dr. Rose appealed from the trial court's decision.

{¶ 23} With these facts in mind, we will consider the assignments of error that Dr. Rose has asserted.

## II. Status of Dr. Rose's Claims and Appropriate Statute of Limitations

{¶ 24} Dr. Rose is acting pro se on appeal, as he did in the trial court. Dr. Rose has asserted eight assignments of error, but he has failed to follow the proper format for briefs as outlined in App.R. 16(A)(1)-(8) and (D). Based on these omissions, we could "either strike the offending portions of the brief or sua sponte dismiss the appeal." *Brazelton v. Brazelton*, 2d Dist. Montgomery No. 24837, 2012-Ohio-3593, ¶ 8. However, in the interests of justice, we will review the merits of Dr. Rose's claims. *Id.* This will involve addressing some assignments of error out of order. We will begin with the second assignment of error, which, quoted verbatim, states "Assignment of error No. 2 Denial of Negligence claim." Appellant's Brief at p. 6.

{¶ 25} Under this assignment of error, Dr. Rose contends that the trial court erred in finding that his claims were "medical claims" rather than claims sounding in ordinary negligence or personal injury. Dr. Rose further argues that the matters at issue in this case (the failure to compare prior MRI films) fall within the common knowledge of jurors, which eliminates the need for expert testimony. As a result, Dr. Rose believes he did not need to furnish an affidavit of merit.

{¶ 26} We will also consider the interrelated fourth assignment of error, which states that:

Assignment of error No. 4   Common Pleas Court (CPC) was wrong to grant summary judgment 56(c) based solely on Statute of Limitations 2305.113.

{¶ 27} Under this assignment of error, Dr. Rose contends that the trial court should have used the statute of limitations in R.C. 2305.10(B)(1), which covers exposure to toxic chemicals.

{¶ 28} And finally, we will discuss the sixth assignment of error, which is also interrelated.   This assignment of error, quoted verbatim, states that:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANTS/ APPELLEES WHERE THERE IS A QUESTION OF FACT AS TO WHEN THE COGNIZABLE EVENT OCCURRED WHICH TOLLED THAT STATUTE OF LIMITATIONS IN MEDICAL MALPRACTICE CASE, SUMMARY JUDGMENT IS IMPROPER AS A MATTER OF LAW.

{¶ 29} Under this assignment of error, Dr. Rose again argues that the appropriate statute of limitations should be R.C. 2305.10(B)(1).   He also contends that even if the medical malpractice statute of limitations applied, the cognizable event for purposes of the statute was May 5, 2020.   This is the date on which Dr. Rose was informed by a "competent medical specialist" that carbon monoxide had caused his problems and that his treating physicians provided negligent care.

{¶ 30} Before we address these issues, we will briefly discuss the appropriate

standards of review that apply to the dismissal of claims under Civ.R. 12(B)(6) and to summary judgments.

A. Dismissal Under Civ.R. 12(B)(6)

{¶ 31} The law is well-established that orders granting Civ.R. 12(B)(6) motions to dismiss are subject to de novo review. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. De novo review "means that we apply the same standards as the trial court." (Citations omitted.) *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.).

{¶ 32} In the context of Civ.R. 12(B)(6) motions, this means that "[i]n construing a complaint upon a motion to dismiss for failure to state a claim, we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1998). Then, before a complaint may be dismissed, "it must appear beyond doubt that plaintiff can prove no set of facts warranting a recovery." *Id.*, citing *O'Brien v. Univ. Community Tenants Union*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. Where, as here, documents are attached to or are incorporated into a complaint, we may also consider the documents. *State ex rel. Washington v. D'Apolito*, 156 Ohio St.3d 77, 2018-Ohio-5135, 123 N.E.3d 947, ¶ 10.

{¶ 33} A motion to dismiss based on the statute of limitations may be granted where the defect is apparent on the face of the complaint, but such a motion "is erroneously granted where the complaint does not conclusively show on its face the action is barred by the statute of limitations." *Velotta v. Leo Petronzio Landscaping, Inc.*,

69 Ohio St.2d 376, 379, 433 N.E.2d 147 (1982), paragraph three of the syllabus. *Accord LGR Realty, Inc. v. Frank & London Ins. Agency*, 152 Ohio St.3d 517, 2018-Ohio-334, 98 N.E.3d 241, ¶ 10. In that situation, summary judgment would be the proper procedure. Here, however, we have both types of dismissals.

## B. Summary Judgment Decisions

**{¶ 34}** "A trial court may grant a moving party summary judgment pursuant to Civ.R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." (Citation omitted.) *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999).

**{¶ 35}** "A party seeking summary judgment 'bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' " *Griffith v. Aultman Hosp.*, 146 Ohio St.3d 196, 2016-Ohio-1138, 54 N.E.3d 1196, ¶ 26, quoting *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered

against the nonmoving party." *Dresher* at 293.

**{¶ 36}** As with decisions on motions to dismiss, we review trial court rulings on summary judgment decisions de novo. *GNFH, Inc.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, at ¶ 16. With these standards in mind, we will consider Dr. Rose's arguments.

### C. Asserted Application of R.C. 2305.10(B)(1)

**{¶ 37}** Dr. Rose suggests that the statute of limitations in R.C. 2305.10(B)(1), rather than the limitations period in R.C. 2305.113(A), should be applied to his claims. Appellant's Brief at p. 14, 18, and 25.

**{¶ 38}** R.C. 2305.10(A) generally provides a two-year statute of limitations for product liability claims and for certain actions for bodily injury and injury to property. The section to which Rose refers, R.C. 2305.10(B)(1), states that:

> For purposes of division (A) of this section, a cause of action for bodily injury that is not described in division (B)(2), (3), (4), or (5) of this section and that is caused by exposure to hazardous or toxic chemicals, ethical drugs, or ethical medical devices accrues upon the date on which the plaintiff is informed by competent medical authority that the plaintiff has an injury that is related to the exposure, or upon the date on which by the exercise of reasonable diligence the plaintiff should have known that the plaintiff has an injury that is related to the exposure, whichever date occurs first.

**{¶ 39}** As far as we can tell, Dr. Rose is arguing that using this statute would toll

the limitations period for bringing his action until May 20, 2020, when Dr. Kenneth DiNella signed an affidavit indicating that Dr. Rose's "psychiatric and physical problems were related to a 'toxic gas[,]' poisonous and lethal with latent manifestations." Appellant's Brief at p. 18 and 24. This is based on Dr. Rose's apparent belief that Dr. DiNella was the first "competent medical authority" who informed him of his injury.

{¶ 40} This argument is incorrect. First of all, Dr. Rose did not allege that Appellees had anything to do with his exposure to toxic chemicals; he alleged that they failed to obtain prior MRI records and to correctly diagnose his condition. As a result, Dr. Rose's claims are "medical claims," which are defined in R.C. 2305.113(E)(3) as "any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, * * * and that arises out of the medical diagnosis, care, or treatment of any person." "Unquestionably, a claim for an injury that occurs during or in medical diagnosis, care, or treatment arises from medical diagnosis, care, or treatment." *Lerner v. Broadview NH, LLC*, 2017-Ohio-8001, 98 N.E.3d 1014, ¶ 13 (10th Dist.). Because the alleged actions here involved injuries that arose from medical diagnosis (or failure to properly diagnose), the proper statute of limitations was R.C. 2305.113(A).

### D. Affidavit of Merit

{¶ 41} Because this case involves medical claims under R.C. 2305.113(E), Dr. Rose needed to comply with the requirements for bringing these claims. One such requirement is filing an affidavit of merit under Civ.R. 10(D)(2), which states that:

(a) Except as provided in division (D)(2)(b) of this rule, a complaint

that contains a medical claim, dental claim, optometric claim, or chiropractic claim, as defined in R.C. 2305.113, shall be accompanied by one or more affidavits of merit relative to each defendant named in the complaint for whom expert testimony is necessary to establish liability. Affidavits of merit shall be provided by an expert witness meeting the requirements of Evid.R. 702 and, if applicable, also meeting the requirements of Evid.R. 601(D). Affidavits of merit shall include all of the following:

(i) A statement that the affiant has reviewed all medical records reasonably available to the plaintiff concerning the allegations contained in the complaint;

(ii) A statement that the affiant is familiar with the applicable standard of care;

(iii) The opinion of the affiant that the standard of care was breached by one or more of the defendants to the action and that the breach caused injury to the plaintiff.

{¶ 42} The exception in Civ.R. 10(D)(2)(b) pertains to filing a request for an extension of time to file the affidavit, which the court may grant for a reasonable time, upon a showing of good cause.

{¶ 43} "Clearly, the purpose behind the rule is to deter the filing of frivolous medical-malpractice claims. The rule is designed to ease the burden on the dockets of Ohio's courts and to ensure that only those plaintiffs truly aggrieved at the hands of the medical profession have their day in court." *Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, ¶ 10.

{¶ 44} Here, Dr. Rose failed to either submit an affidavit of merit or ask the court for an extension of time. Consequently, he did not comply with the Civ.R. 10(D)(2) requirements. Dr. Rose argues, however, that he was not required to submit an affidavit because the importance of comparing previous abnormal films is within a trier of fact's knowledge. The trial court rejected Dr. Rose's "common knowledge" exception because it is rarely used and is limited in scope. Order at p. 11. The court also held that the allegations against Dr. Rose and CCF were not matters of common knowledge and expert testimony would be needed. *Id.*

{¶ 45} In *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 346 N.E.2d 673 (1976), the Supreme Court of Ohio stated that:

> "The issue as to whether the physician and surgeon has proceeded in the treatment of a patient with the requisite standard of care and skill must ordinarily be determined from the testimony of medical experts. * * * It should be noted that there is an exception to that rule in cases where the nature of the case is such that the lack of skill or care of the physician and surgeon is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it, and in such case expert testimony is not necessary."

*Id.* at 130.

{¶ 46} As an example of "common knowledge," cases involving matters like an unattended patient falling from a bed are "claims of ordinary negligence." However, matters that involve "professional skill and judgment" are "not within the common knowledge and experience of the jurors." *Ramage v. Cent. Ohio Emergency Serv., Inc.*,

64 Ohio St.3d 97, 103, 592 N.E.2d 828 (1992). Notably, " '[r]elatively few courts in Ohio have found the common knowledge exception applicable so as to obviate the need for expert witness testimony on the malpractice issue.' " *Cunningham v. Children's Hosp.*, 10th Dist. Franklin No. 05AP-69, 2005-Ohio-4284, ¶ 20, quoting *Buerger v. Ohio Dept. of Rehab. & Corr.*, 64 Ohio App.3d 394, 399, 581 N.E.2d 1114 (10th Dist.1989). In *Cunningham*, the court also stressed that "[t]he common knowledge exception has a limited scope in a world of increasing medical complexity." *Id.* *Accord Culp v. Olukoga*, 2013-Ohio-5211, 3 N.E.3d 724, ¶ 74 (4th Dist.).

{¶ 47} "Expert-opinion evidence * * * is required where the inquiry pertains to a highly technical question of science or art or to a particular professional or mechanical skill." *Jones v. Hawkes Hosp. of Mt. Carmel*, 175 Ohio St. 503, 196 N.E.2d 592 (1964), paragraph one of the syllabus. The field of radiology involves professional skill and highly technical scientific questions, and, therefore, is not within the common knowledge of jurors. Accordingly, the trial court did not err in rejecting Dr. Rose's assertion of the common knowledge exception, and it did not err in dismissing Dr. Rose's action based on his failure to include an affidavit of merit or to ask for an extension.

{¶ 48} Typically, a dismissal for failure to file an affidavit of merit is a dismissal without prejudice. *Fletcher*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, at ¶ 20. Here, however, the court dismissed Dr. Rose's claims with prejudice because the action was otherwise precluded by the statute of limitations. Order at p. 12. This leads us to the next issue, which concerns when the cognizable event occurred for purposes of the statute of limitations in R.C. 2305.113(A).

E. Cognizable Event for Purposes of R.C. 2305.113(A)

**{¶ 49}** In connection with the sixth assignment of error, Dr. Rose again argues that the proper statute of limitations is found in R.C. 2305.10(B)(1). Dr. Rose further admits that he learned on June 15, 2017, that "a fellow CCF doctor had reviewed the MRI of 2013 and found possible pathology suggesting carbon monoxide damage." Appellant's Brief at p. 19-20. However, Dr. Rose contends that the opinion of the doctor in question did not qualify as a "competent medical authority" because that doctor was "not a neurologist or psychiatrist." *Id.* at p. 20. Based on this theory, Dr. Rose argues that June 15, 2017, was not a "cognizable event" for applying the statute of limitations and that the trial court erred in using that date as the beginning point for applying R.C. 2305.19(A).

**{¶ 50}** Under R.C. 2305.113(A), "an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued." For purposes of this statute, "a cause of action for medical malpractice accrues and the one-year statute of limitations commences to run (a) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (b) when the physician-patient relationship for that condition terminates, whichever occurs later." *Frysinger v. Leech*, 32 Ohio St.3d 38, 512 N.E.2d 337 (1987), paragraph one of the syllabus (interpreting predecessor statute, R.C. 2305.11(A), which is similar to R.C. 2305.113(A) in pertinent part).

**{¶ 51}** There is no dispute here that Dr. Rose's relationship with Appellees ended,

at the latest, on May 3, 2013, when the 2013 MRI was read and reported.[3]  Given this date, the original complaint, filed on June 15, 2018, was clearly more than one year after the medical relationships ended.   However, as noted, Dr. Rose argues that the current lawsuit is timely because he did not discover the resulting injury from the alleged malpractice until May 5, 2020, when he read Dr. DiNella's Civ.R. 10(D)(2) affidavit.   *See* Appellant's Brief at p. 17-18.   This argument is plainly incorrect, since Dr. Rose's June 2018 action raised the same allegations about carbon dioxide and medical malpractice that he asserts here.

{¶ 52} Based on Dr. Rose's own allegations in the complaint filed in the present case on May 14, 2020, the trial court found that "the cognizable event occurred on June 15, 2017, when Dr. Rose discovered the resulting injury."   Order at p. 13.   The court's finding was due to the complaint's allegation that on June 15, 2017, "a repeat MRI * * * was read * * * by another radiologist, * * * who reviewed this MRI and felt pathological changes existed," which Dr. Rose described as a " '**revelation**.' "   (Emphasis sic.)   *Id.* at p. 12, quoting Complaint at p. 1.   We agree with the trial court this was the date the cause of action accrued.   There is simply no evidence otherwise.

{¶ 53} In this context, we stress Dr. Rose's admission that he learned about the pathology suggesting carbon monoxide on June 15, 2017.   Complaint at p. 1; Appellant's Brief at p. 19-20.   As indicated, Dr. Rose discounts this fact because the doctor who provided the information was not a neurologist or psychiatrist as required by Civ.R.

---

[3] Based on the allegations in the complaint, the trial court used June 2, 2013, as the date that Dr. Tievsky read and reported on the MRI.   Order at p. 12 and 13.   However, the relevant MRI report that Dr. Rose attached to his affidavit was dated May 3, 2013. Rose Aff. at p. 208.   As a result, we will use that date rather than June 2, 2013.   For purposes of analysis, the difference in the two dates is not material.

10(D)(2). However, there is no requirement that discovery of an injury must be occasioned by a doctor providing a Civ.R. 10(D)(2) affidavit. To the contrary, the law requires only that the "patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury." *Frysinger*, 32 Ohio St.3d 38, 512 N.E.2d 337, at paragraph one of the syllabus. "The standard of reasonable care and diligence required by this test is that which is employed by an ordinary reasonably prudent person in like circumstances." *Clark v. Hawkes Hosp. of Mt. Carmel*, 9 Ohio St.3d 182, 183, 459 N.E.2d 559 (1984).

{¶ 54} Furthermore, courts must look to a particular case's facts and decide "when the injured party became aware, or should have become aware, of the extent and seriousness of his condition, which, of course, may occur without the necessity of further medical consultation; whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered him; and whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition." *Hershberger v. Akron City Hosp.*, 34 Ohio St.3d 1, 5-6, 516 N.E.2d 204 (1987), paragraph one of the syllabus.

{¶ 55} "The 'extent and seriousness of his condition' language of the test set forth in *Hershberger* * * * requires that there be an occurrence of a 'cognizable event' which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies." *Allenius v. Thomas*, 42 Ohio St.3d 131, 538 N.E.2d 93 (1989), syllabus. "If a patient believes, based on a known injury, that her

treating medical professional has done something wrong, that belief is sufficient to alert the patient to the need to investigate and pursue a remedy." *Schmitz v. Natl. Collegiate Athletic Assn.*, 155 Ohio St.3d 389, 2018-Ohio-4391, 122 N.E.3d 80, ¶ 22, citing *Allenius* at 133.

{¶ 56} The affidavit that Dr. Rose signed on September 15, 2020, indicated that he graduated from The Ohio State University Medical School in 1984 and had been a primary care physician for 33 years. Rose Affidavit (Sep. 28, 2020), p. 1. Dr. Rose further stated that "[o]ver the last 9 years," he had "been very interested in the effects of Carbon Monoxide on human mental and physical problems," had "read over 700 peer-reviewed articles," and had "reviewed over 100 books dealing with carbon monoxide pathology." *Id.* at p. 2. In addition, Dr. Rose's affidavit stated that *since 2016*, he had been aware that his automobile "was causing toxic carbon monoxide levels in the driver's compartment." *Id.* at p. 4, referencing Ex. G attached to the Rose Affidavit.[4]

{¶ 57} In light of these facts, including Dr. Rose's knowledge of carbon monoxide effects and pathology dating back to around 2011, his suspicion since at least 2016 that he had been exposed to inappropriate carbon monoxide, and the MRI abnormalities related to potential carbon monoxide exposure to which he was alerted in June 2017, a reasonably prudent person in Dr. Rose's circumstances would have been put on notice of the need for further inquiry as to the cause of his condition and the need to pursue

---

[4] Exhibit G attached to Dr. Rose's affidavit was a July 13, 2016 Inspection Report of Dr. Rose's automobile. The report stated that the vehicle "is suspected of exposing the occupant(s) to Carbon Monoxide poisoning." *Id.* at p. 68 of the documents attached to the Rose Affidavit. Further, the report concludes that "Tailpipe emissions of CO and HC are extremely high, due to a malfunction in the fuel injection system," and that "[u]nder some conditions, tailpipe emissions enter the passenger compartment, creating a hazardous environment." *Id.* at p. 71.

remedies, at the latest, on June 15, 2017 (and probably earlier). Therefore, the trial court correctly concluded that the "cognizable event" occurred on June 15, 2017. Accordingly, the trial court did not err in applying the statute of limitations found in R.C. 2305.113(A) and in assigning a date on which the cognizable event occurred for purposes of applying the statute.

{¶ 58} Based on the preceding discussion, the second, fourth, and sixth assignments of error are overruled.

## IV. Tolling of the Statute of Limitations

{¶ 59} Concerning tolling, Dr. Rose presents the following three assignments of error (all recited verbatim):

> Assignment of error No. 3   Common Court stated pg 13 para 18 "Dr. Rose does not provide evidence of unsound mind. . . Furthermore, Dr. Rose does not assert he was of unsound mind at the time the cause of action accrued.......The Court therefore finds the tolling provision of R.C. 2305.16 to be inapplicable."

> Assignment of error 7   Defendant's contention "not of unsound mind."

> Assignment of error 8   Failure, by plaintiff to provide proof of allegation in memorandum against Summary Judgment.

{¶ 60} Under these assignments of error, Dr. Rose essentially contends that there were genuine issues of material fact concerning whether he was of "unsound mind" at the time his cause of action accrued, and that the trial court, therefore, should have found the

statute of limitations tolled. The court rejected Dr. Rose's claim that his action was timely filed due to R.C. 2305.113(C) and/or R.C. 2305.113(D)(1). Order at p. 13-14. We will only consider R.C. 2305.113(C), as Dr. Rose did not mention R.C. 2305.113(D)(1) in his brief.

{¶ 61} Regarding R.C. 2305.113(C), the court held that tolling did not apply because Dr. Rose failed to provide any evidence that he was of unsound mind when the cause of action accrued on June 15, 2017, or at any time thereafter. *Id.* at p. 13. Again, we review the court's decision on a de novo basis.

{¶ 62} As relevant here, R.C. 2305.113(C)(1) states that "No action upon a medical * * * claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical * * * claim." In a very recent decision, the Supreme Court of Ohio distinguished as follows between statutes of limitations and statutes of repose:

> A statute of limitations establishes "a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)." *Black's Law Dictionary* 1707 (11th Ed.2019). A statute of limitations operates on the remedy, not on the existence of the cause of action itself. *Mominee v. Scherbarth*, 28 Ohio St.3d 270, 290, 503 N.E.2d 717, fn. 17 (Douglas, J., concurring). A statute of repose, on the other hand, bars "any suit that is brought after a specified time since the defendant acted * * * even if this period ends before the plaintiff has suffered a resulting injury." *Black's Law Dictionary* at 1707. A statute of repose bars the claim – the right of action – itself. *Treese v.*

*Delaware*, 95 Ohio App.3d 536, 545, 642 N.E.2d 1147 (10th Dist. 1994).

* * *

*Wilson v. Durrani*, Ohio Slip Opinion No. 2020-Ohio-6827, ___ N.E.3d ___, ¶ 9.

{¶ 63} The Supreme Court of Ohio further remarked that "[s]tatutes of limitations and statutes of repose target different actors." *Id.* at ¶ 10, citing *CTS Corp. v. Waldburger*, 573 U.S. 1, 8, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014). In this vein, the court explained that:

> Statutes of limitations emphasize plaintiffs' duty to diligently prosecute known claims. [*CTS Corp.* at 8], citing *Black's Law Dictionary* 1546 (9th Ed.2009). Statutes of repose, on the other hand, emphasize defendants' entitlement to be free from liability after a legislatively determined time. *Id.* at 9, 134 S.Ct. 2175. In light of those differences, statutory schemes commonly pair a shorter statute of limitations with a longer statute of repose. *California Pub. Emps.' Retirement Sys. v. ANZ Securities, Inc.*, --- U.S. ---, 137 S.Ct. 2042, 2049, 198 L.Ed.2d 584 (2017). When the discovery rule – that is, the rule that the statute of limitations runs from the discovery of injury – governs the running of a statute of limitations, the "discovery rule gives leeway to a plaintiff who has not yet learned of a violation, while the rule of repose protects the defendant from an interminable threat of liability." *Id.* at ----, 137 S.Ct. at 2050.

*Wilson* at ¶ 10.

{¶ 64} In *Wilson*, the court stressed that "R.C. 2305.113(C) 'exists to give medical providers certainty with respect to the time within which a claim can be brought and a time

after which they may be free from the fear of litigation.' " *Id.* at ¶ 16, quoting *Ruther v. Kaiser*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291, ¶ 19. "It is a 'true statute of repose that applies to both vested and nonvested claims. Therefore, any medical-malpractice action must be filed within four years of the occurrence of the act or omission alleged to have caused a plaintiff's injury.' " *Id.*, quoting *Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, ¶ 1.

{¶ 65} As applied to the current case, whether or not a prior action was filed and dismissed, this action would be barred, absent tolling, because it was filed on May 14, 2020, more than seven years after the alleged "acts or omissions constituting the alleged basis of the medical * * * claim." R.C. 2305.113(C)(1). Notably, this subsection of the statute does not refer to when a claim accrues; it refers to when the acts or omissions occurred.

{¶ 66} R.C. 2305.113(C) contains a few exceptions to the four-year barrier. The first, in subsection (C)(1), is for "persons within the age of minority or of unsound mind as provided by section 2305.16 of the Ohio Revised Code." R.C. 2305.16 states, in pertinent part, that:

> Unless otherwise provided in sections 1302.98, 1304.35, and 2305.04 to 2305.14 of the Revised Code, if a person entitled to bring any action mentioned in those sections * * * is, at the time the cause of action accrues, within the age of minority or of unsound mind, the person may bring it within the respective times limited by those sections, after the disability is removed. * * *

{¶ 67} A second exception in R.C. 2305.113(C)(2) allows tolling after a cause of

action accrues "if the person entitled to bring the action becomes of unsound mind and is adjudicated as such by a court of competent jurisdiction or is confined in an institution or hospital under a diagnosed condition or disease which renders the person of unsound mind."

{¶ 68} " 'Of unsound mind' includes all forms of derangement or intellectual disability." R.C. 1.02 (C). " '[D]erangement' has been equated with insanity." *Fisher v. Ohio Univ.*, 63 Ohio St.3d 484, 488, 589 N.E.2d 13 (1992), citing *Webster's Third New International Dictionary* 607 (1986). A plaintiff has the burden of showing that "the condition from which he or she suffered was 'some species of mental deficiency or derangement [that caused him] to be unable to look into his affairs, properly consult with counsel, prepare and present his case and assert and protect his rights in a court of justice.' " *Thomas v. Progressive Cas. Ins. Co.*, 2011-Ohio-6712, 969 N.E.2d 1284, ¶ 29 (2d Dist.), quoting *Bowman v. Lemon*, 115 Ohio St. 326, 329, 154 N.E. 317 (1926), paragraph three of the syllabus.

{¶ 69} Dr. Rose argues on appeal that there are factual issues concerning whether he was of unsound mind because he suffered several periods between 2013 and 2017 where he was hospitalized for mental changes that forced him to be off work. Appellant's Brief at p. 10. He further argues that while hospitalized at Glenbeigh (a rehabilitation center) in June 2013, his mind was described as "hazy," or "not in touch with reality." Appellant's Brief at p. 11. In addition, Dr. Rose claims that he "has obtained proof of 52 days of unsound mind since [his] memorandum," and asks that this data be entered into the record. *Id.* at p. 12.

{¶ 70} To the extent this latter statement refers to matters outside the record, we

will not consider it. *E.g., State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus (stressing "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter").

{¶ 71} The trial court rejected tolling for two reasons. First, Dr. Rose failed to submit any evidence that he was of unsound mind on June 15, 2017, or at any time thereafter. Order at p. 13. The court also stressed that Dr. Rose did not claim that he was unsound at these times; rather, he asserted "without proof that he was of 'unsound mind' for several periods between 2013 and 2017 and that he was on a 72-hour hold in May of 2017, all of which occurred prior to his discovery of the underlying medical malpractice case." *Id.*, quoting Complaint at p. 1.

{¶ 72} We agree with the trial court. The only items Dr. Rose submitted in the trial court were: "Plaintiff's Memorandum Against Motion to Dismiss" (July 10, 2020), containing only argument and unverified allegations; "Plaintiff's Motion Against Summary Judgement [sic] and Request for Jury trial" (Sep. 28, 2020), containing only argument and unverified allegations; and Dr. Rose's own affidavit with various unauthenticated materials attached. Rose Aff. (Sep. 28, 2020).

{¶ 73} Dr. Rose's affidavit sets forth his qualifications and background as a primary care physician. Rose Aff. at p. 1. He then stated that he experienced "substandard treatment" while a patient at Glenbeigh in May and June 2013. *Id.* at p. 2. The rest of the affidavit detailed incidents and medical evaluations that occurred between 2011 and April 2017 which indicated, in Dr. Rose's opinion, that the prior diagnoses of his medical problems ("schizo-affective, biopolar, obsessive compulsive, alcohol dependent,

benzodiazepine dependence") were "wrong and were arrived at by substandard review of all medical records available to the Glenbeigh personnel and Dr. Primc." *Id.* at p. 6. At the end of this discussion, Dr. Rose stated briefly that "Dr. Tievsky's MRI misread has been paramount in damages to Dr. Rose. Failure to compare previous films absolute negligence." *Id.*

{¶ 74} None of this, however, had anything to do with whether Dr. Rose was of unsound mind on June 15, 2017, when the cause of action accrued, or on April 19, 2017, which Dr. Rose suggests in his affidavit was the date he was given an opinion of possible carbon monoxide involvement. *Id.* at p. 5. This information also had nothing to do with whether Dr. Rose was of unsound mind any time after June 15, 2017.

{¶ 75} The materials attached to Dr. Rose's affidavit (208 pages of documents) consisted of various medical records and other records, which were not properly authenticated. Nonetheless, even if these materials were considered, a consultation with Dr. Goldstick dated May 26, 2017, stated that after being admitted to Kettering Hospital on May 20, 2017, for a "brief period of psychological decompensation," Dr. Rose "returned to his normal mentation * * *." Rose Aff., Ex. A, May 26, 2017 Report of Dr. Goldstick p. 2. At that time, according to the patient history, Dr. Rose noted that "in 2010, he bought a used car and was driving this for quite some time. He feels there may have been exposure of carbon monoxide at the time and when the car was tested at one point it registered 300 ppm of carbon monoxide." *Id.*

{¶ 76} In Dr. Goldstick's examination of Dr. Rose on May 26, 2017, Goldstick stated that Dr. Rose's attention and concentration were "normal," his speech was "normal," his level of consciousness was "alert," his knowledge was "good," and his

comprehension was "normal." Ex. A at p. 2-3. Another examination by Dr. Goldstick on September 27, 2017, indicated that Dr. Rose "remains stable at this time and is operating a [sic] normal activities at this time [and] apparently is also active professionally." Ex. A, September 27, 2017 Report of Dr. Goldstick, p. 13. Dr. Rose did not provide any other materials relating to the "unsoundness" of his mind after September 2017.

{¶ 77} Accordingly, even if we considered Dr. Rose's affidavit and the attached materials, they would only disprove any contention that he was of unsound mind as of June 15, 2017, or any time thereafter.

{¶ 78} In connection with the eighth assignment of error, Dr. Rose questions why the trial court required him to show proof of his "unsound mind," when Civ.R. 12(B)(6) requires that the court construe all the allegations in the complaint as true. Appellant's Brief at p. 21-22. Dr. Rose then offers to submit records from his current psychiatrist, which he obtained after the trial court issued its decision, and states that he wants us to allow these records to be "admitted to [the] record." *Id.* at p. 22. As we stressed earlier, we cannot add matters to the record that the trial court did not consider. *Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500, at paragraph one of the syllabus.

{¶ 79} Next, regarding the "proof" requirement, the trial court was entitled to consider what the evidence established, because two motions were pending: a motion to dismiss and a motion for summary judgment. As we mentioned, a court does construe a complaint's allegations as true for purposes of motions to dismiss. However, when Dr. Tievsky and CCF submitted materials to satisfy their burden on summary judgment, Dr. Rose had the reciprocal burden of showing there were genuine issues of material fact precluding summary judgment. *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264. This,

he failed to do. Consequently, the trial court did not err in this regard.

{¶ 80} As a pro se litigant, Dr. Rose clearly does not understand legal procedure, and, like most such litigants, finds the law difficult. However, we have repeatedly emphasized that "[i]n Ohio, a pro se litigant 'is presumed to have knowledge of the law and of correct legal procedure and is held to the same standard as all other litigants.' " *Citibank S. Dakota, N.A. v. Wood*, 169 Ohio App.3d 269, 2006-Ohio-5755, 862 N.E.2d 576, ¶ 57 (2d Dist.), quoting *Kilroy v. B.H. Lakeshore Co.*, 111 Ohio App.3d 357, 363, 676 N.E.2d 171 (8th Dist.1996). *See also Williams v. PNC Bank, Natl. Assn.*, 2d Dist. Montgomery No. 28933, 2021-Ohio-977, ¶ 2; *State ex rel. Fuller v. Mengel*, 100 Ohio St.3d 352, 2003-Ohio-6448, 800 N.E.2d 25, ¶ 10.

{¶ 81} Having agreed with the trial court that tolling does not apply, a few additional points about R.C. 2305.19 are in order. Normally, when a complaint is dismissed without prejudice, the plaintiff "may commence a new action within one year after the date of * * * the plaintiff's failure otherwise than on the merits." R.C. 2305.19(A) (the savings statute). Here, the trial court held that even if the original complaint had been timely filed, Dr. Rose could not take advantage of the savings statute. Order at p. 14-16. In this regard, the court noted that the 2020 action was filed about 21 months after the first action was dismissed on August 22, 2018. Because this was more than a year after the dismissal, R.C. 2305.19(A) did not apply and provided an additional reason for dismissing Dr. Rose's claims. *Id.* at p.15.

{¶ 82} We agree that this would normally be the case, and further observe that Dr. Rose has not assigned error specifically on this issue. However, the Supreme Court of Ohio recently issued a decision that impacts what previously would have been true in

situations like the present.   Specifically, in *Wilson*, the Supreme Court of Ohio held that:

> R.C. 2305.113(C) is a true statute of repose that, except as expressly stated in R.C. 2305.113(C) and (D), clearly and unambiguously precludes the commencement of a medical claim more than four years after the occurrence of the alleged act or omission that forms the basis of the claim. Expiration of the statute of repose precludes the commencement, pursuant to the saving statute, of a claim that has previously failed otherwise than on the merits in a prior action.

*Wilson*, Ohio Slip Opinion No. 2020-Ohio-6827, __ N.E.3d __, at ¶ 38.   Therefore, a plaintiff may not "take advantage of Ohio's saving statute to refile a medical claim after the applicable one-year statute of limitations has expired if the four-year statute of repose for medical claims has also expired."   *Id.* at ¶ 1.

{¶ 83} The trial court was likely unaware of the *Wilson* decision, as it was issued on December 23, 2020, only a few days before the court dismissed Dr. Rose's case with prejudice on December 29, 2020.   The effect of *Wilson* is that Dr. Rose could not have used the savings statute in R.C. 2305.19(A) to refile because both the one-year statute of limitations in R.C. 2305.113(A) and the four-year statute of repose in R.C. 2305.113(C) had already expired before Dr. Rose filed the current action.

{¶ 84} Specifically, Dr. Rose's latest contact with Dr. Tievsky and CCF ended at the latest on May 3, 2013.   Four years from that date would have been May 4, 2017.   Thus, by the time Dr. Rose filed his initial action in this matter on June 15, 2018, the four-year statute of repose in R.C. 2305.113(C) had already expired.   Based on the June 15, 2017 accrual date of Dr. Rose's medical claims, the one-year statute of limitations in R.C.

2305.113(C) also expired the day after Dr. Rose filed the initial action.

**{¶ 85}** As a result, even if the first action had been timely filed, Dr. Rose could not have used R.C. 2305.19(A) to refile the action on May 14, 2020, since the four-year period of repose expired by May 4, 2017. And, on May 14, 2020, the one-year statute of limitations in R.C. 2305.113(A) had also already expired. In fact, Dr. Rose refiled the present case *more than seven years after May 3, 2013*. Accordingly, Dr. Rose's claims were barred under the statute of repose in R.C. 2305.113(C).

**{¶ 86}** Any error by the trial court, however, was harmless, because the end result was the same. *See* Civ.R. 61 (instructing courts to disregard errors that do "not affect the substantial rights of the parties"). We note that the trial court did also make a finding, while discussing tolling, that the statute of repose in R.C. 2305.113(C) barred Dr. Rose's claims because they were not commenced until more than four years after the occurrence of the acts on which his claims were based. Order at p. 13.

**{¶ 87}** Based on the preceding discussion, the third, seventh, and eighth assignments of error are without merit and are overruled.

## V.   Failure to Consider Dr. Rose's Affidavit

**{¶ 88}** Dr. Rose's first assignment of error states as follows:

Assignment of error No. 1.   Failure to Recognize Civ.R. 56 Qualified Affidavit by Dr. Rose.

**{¶ 89}** Under this assignment of error, Dr. Rose appears to be arguing that the trial court erred by failing to admit his affidavit into the record or to consider it. Dr. Rose contends that he was qualified to give an opinion under Civ.R. 56(E), as he had been a

practicing physician for many years.

{¶ 90} The trial court did not err in this regard. While the court did not specifically mention Dr. Rose's affidavit and the attached documents during its discussion, we have already said that even if the content of Dr. Rose's affidavit and the attached documents were considered, they indicated that a reasonably prudent person in his circumstances would have been put on notice of the need for further inquiry as to the cause of his condition and the need to pursue remedies, at the latest, on June 15, 2017. These materials also established that Dr. Rose was of sound mind at the relevant time and thereafter.

{¶ 91} In addition, Dr. Rose admitted in his brief that he was not certified as a neuro-radiologist. Appellant's Brief at p. 5. Dr. Rose did not specifically argue that his affidavit could substitute for an affidavit of merit in the trial court, although that is, perhaps, implied. However, that argument would fail for two reasons. First, Dr. Rose did not make this argument in the trial court.

{¶ 92} A fundamental rule of appellate procedure is that appellate courts "will not consider any error which could have been brought to the trial court's attention, and hence avoided or otherwise corrected." *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 210, 436 N.E.2d 1001 (1982). *Accord Jackson v. Internatl. Fiber*, 169 Ohio App.3d 395, 2006-Ohio-5799, 863 N.E.2d 189, ¶ 11 (2d Dist.). We can recognize plain error in such situations, but it is disfavored in civil cases "and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process

itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus. No exceptional circumstances exist here.

**{¶ 93}** Even if we did consider "plain error," any such notion would be squelched by our second reason for rejecting Dr. Rose's argument. Specifically, Dr. Rose's affidavit could not be substituted for a proper Civ.R. 10(D)(2) affidavit of merit because it failed to comply with the requirements of Civ.R. 10(D)(2). One defect was that the affidavit did not state that Dr. Rose was familiar with the standard of care for radio-neurologists or radiologists. This is a requirement under Civ.R. 10(D)(2)(a)(ii).

**{¶ 94}** Furthermore, Civ.R. 10(D)(2)(a) mandates that expert witnesses must meet "the requirements of Evid.R. 702 and, if applicable, also * * * the requirements of Evid.R. 601(D)."[5] Among other things, Evid.R. 601(D) [now Evid.R. 601(B)(5)(a)-(c)] disqualifies persons from giving expert testimony about medical claims unless "[t]he person practices in the same or a substantially similar specialty as the defendant." Evid.R. 601(B)(5)(c). In Dr. Rose's affidavit, he identified himself as a person certified in "Family Practice," and he did not provide any evidence indicating that this was the same or a substantially similar specialty as the one Dr. Tievsky practiced (radiology).

**{¶ 95}** As a result, the trial court did not err in any manner relating to Dr. Rose's affidavit. The first assignment of error, therefore, is overruled.

---

[5] Evid.R.601 has been amended a number of times since Civ.R. 10 was amended to add provisions pertaining to medical actions. Subsection (D) became subsection (E) on July 1, 2020, and under an amendment effective on July 21, 2021, is now Evid.R. 601(B)(5)(a)-(c). *See* https://www.supremecourt.ohio.gov/ruleamendments/documents/4.22.20%20Posting.pdf, and https://www.supremecourt.ohio.gov/ruleamendments/documents/Online%20Posting%20-%20Final%20Rules%20(7.1.21).pdf (both accessed on August 16, 2021). Civ.R. 10 has not been updated to address the change in Evid.R. 601.

## VI.   Fraudulent Concealment

{¶ 96} Dr. Rose's fifth assignment of error, again quoted verbatim, states as follows:

Fraudulent Concealment, Fraudulent Conveyance, by Dr. Spreitzer,

Employee of CCF.

{¶ 97} Under this assignment of error, Dr. Rose alleges that Dr. Spreitzer purposely failed to compare Dr. Tievsky's 2013 MRI reading because Dr. Spreitzer realized an error had been made previously.   This is apparently based on a comment in Dr. Spreitzer's notes that "[a] previous study 5/03/2013 is not available for comparison." Appellant's Brief at p. 14-15.   During the rest of his argument, Dr. Rose refers to facts he allegedly learned after he filed his summary judgment motion, by apparently looking up the phone number for "CCF's Star Imagining" in Kettering, Ohio, by reviewing a CCF advertisement, and by making a telephone call to the Ashtabula Radiology Department. *Id.* at p. 15-16.   Somehow, according to Dr. Rose, this adds up to some sort of claim for fraudulent concealment.

{¶ 98} Dr. Rose did not sue Dr. Spreitzer.   Based on documents attached to the complaint, Dr. Spreitzer apparently reviewed an MRI done on Dr. Rose on May 24, 2017, based on a history of "chronic heartburn, monoxide exposure, imbalance, and low serum sodium."   The original report indicated that a prior study done on May 3. 2013, was not available for comparison.   However, a June 15, 2017 update (less than a month later) added that the previous study of May 3, 2013, was now available for comparison.   There was no difference between the original and updated reports with respect to the findings made about the May 24, 2017 MRI.

{¶ 99} The complaint, Dr. Rose's memoranda, and his affidavit did not mention claims against Dr. Spreitzer based on this MRI report. Even if they had, we see no relevance of this matter. And, as we have already mentioned, we cannot consider evidence that was not presented to the trial court.

{¶ 100} Based on the preceding discussion, the matters discussed in connection with this assignment of error either are completely irrelevant or relate to information that Dr. Rose learned after his case was dismissed. Consequently, the fifth assignment of error is without merit and is overruled.

## VII. Conclusion

{¶ 101} All of Dr. Rose's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.

Copies sent to:

Bernard Joseph Rose, M.D.
Matthew L. Schrader
David Valent
Hon. Mary Lynn Wiseman